ARKANSAS VALLEY & WESTERN RAILWAY COMPANY, *a Corporation*,
v. JAMES D. WITT..

(Filed September 5, 1907.)

(91 Pac. 897.)

1. **APPEAL—Exceptions—General Exception Insufficient, When.** A general exception to a refusal to submit to the jury a number of special interrogatories is insufficient if any one of them be improper.

2. **SAME—Excessive Verdict—Grounds for Setting Aside.** The verdict of a jury should not be set aside on the ground that it is excessive, unless it clearly appears that the jury have committed some gross and palpable error or have acted under some improper bias, influence, or prejudice, or have mistaken the rules of law stating the measure of damages.

3. **EMINENT DOMAIN—Damages—Scope of Evidence.** In determining the damages to private property caused by the exercise of the right of eminent domain for a right of way for railroad purposes, testimony showing the excavations, embankments, and obstructions to the natural flow of surface water necessarily caused by the construction of the road is properly admitted for the purpose of showing in what way and to what extent the remaining portion of the uncondemned tract has been damaged by reason of the construction of the road.

4. **SAME.** Under the statutes of Oklahoma, damages in condemnation proceedings for railroad right of way purposes are not limited to the real estate taken and injured, but may be such damages as the owner actually sustains to either his real or personal property by the appropriation of his land and by reason of such railroad.

(Syllabus by the Court.)

*Error from the District Court of Pawnee County; before Bayard T. Hainer, Trial Judge.*

Affirmed.

*Biddison & Eagleton,* for plaintiff in error.

*Wrightsman & Diggs,* for defendant in error.

Opinion of the court by

GARBER, J.: Plaintiff in error is a railway corporation, and condemned for its right of way across defendant in error's land a strip containing 6.51 acres. The condemnation proceedings were in conformity with the requirements of the law, and the defendant in error properly appealed from the award made by the commissioners to the district court, where a trial by jury was had and a verdict returned in favor of the defendant in the sum of $1,450.00, and, judgment being rendered theron for that amount, plaintiff appeals to this court, and asks for a reversal of this case upon the ground that the judgment is excessive. The questions involved in the trial of the case were: First, the reasonable market value of the land taken for right of way purposes; and, second, the injury or damage done to the remaining portions of the land by reason of the construction of the railroad and the appropriation of the tract.

An examination of the record discloses that numerous witnesses for the defendant testified that the reasonable market value of the farm immediately prior to the construction of the right of way across the land was from $4,000.00 to $4,500.00, and that the reasonable market value immediately thereafter was from $2,000.00 to $2,500.00, from which we conclude that the lowest estimated damage by defendant's witnesses was $1,500.00, or $50.00 in excess of the amount found by the jury. These witnesses were farmers living in the neighborhood and well qualified by their long experience as farmers, and by their familiarity with the location of the farm and the road, as shown by maps thereof, to estimate the damage to the land caused by the railroad. The separation of pasture, improvements, and water facilities from their con-

venient connections, the inconvenience of crossing the railroad with farm machinery to farm separate tracts, the increased care and watchfulness necessary at all times while working in the immediate vicinity of the road with horses and farm machinery, the anxiety and uneasiness, the disturbance of that sense of safety and security to all members of the family while peacefully engaged in their different lines of production on different portions of the farm, were matters peculiarly within the knowledge of the experienced farmers who testified relative to the reasonable market value of the land for farming purposes immediately before and after the constuction of the road. And these questions of fact were peculiarly within the province of the jury to determine in the light of all the evidence introduced at the trial of the case. We are not in sympathy with the growing assumption of appellate courts to set aside a verdict on the ground that it is excessive, when it has been approved by the trial court, unless it clearly appears that the verdict has been the result of prejudice or passion or grossly overestimated damages. The jurors and the trial judge, having the advantage of observing and hearing the witnesses on the stand in direct and cross-examination, receiving their information at first hand, as a rule are in a better position to determine the question of fact than the appellate court, receiving its information from the record. It clearly appearing that the evidence in this case is sufficient to support the verdict and judgment, and that the amount represents a reasonable assessment of damages sustained, this court will not set the judgment aside upon the ground that it is excessive.

The second and third assignments of error challenge the admission of testimony and the instructions of the court. Over the objections of the defendant, the trial court admitted testimony showing excavations made in securing materials for fills—in railroad parlance called "borrow-pits"—and in throwing up embankments upon the defendant's land uncondemned; also, the admission of testimony showing the overflow of several acres of defend-

ant's land caused by said embankments obstructing the natural
flow of surface water. It is insisted that these are elements of
damage which could not be considered by the jury in this action,
but are separate causes of action which can not be merged in a
condemnation proceeding. Plaintiff in error insists that in condemn-
ation proceedings the true rule is "that a party exercising the right
of eminent domain is liable for all such damages and only such
damages as may accrue to the land owner by reason of the taking
of the land, the same to be used in any way that the condemn-
ing party acquires the right to use it, and this whether the con-
demning party actually does so use the land or not." Numerous
authorities are cited in support of plaintiff's position, based in
many instances upon the statutes and constitutions of other
states, which are not controlling here. In the case of *Blincoe v.
C. O. & W. Ry. Co.,* 16 Okla. 286, 83 Pac. 903, Mr. Justice Gil-
lette, in an able and exhaustive review of the authorities, many of
which are cited here, in the opinion of the court, said: "From
these cases it will appear that there is no general rule govern-
ing the manner in which damages to private property when taken
for public use are to be measured.. Such measurements must de-
pend upon the constitutional law authorizing the taking, and con-
sequential damages will be allowed when justified by such pro-
visions. Is the taking and damage to personal property under
the law of eminent domain within the foregoing rule applicable
to real estate? If so, the exercise of this power over or upon the
property of a citizen should carry with it the right of the citizen
to recover all the damages he has suffered by reason of its exercise
whether to his real or personal property." The damages for which
a land owner may recover in condemnation proceedings, as ex-
pressed by statute, are not limited, as contended by plaintiff, to
damages accruing from the mere taking of the land, but include
the damages sustained by reason of the appropriation of the land,
and in determining such damages it is proper to consider the
injury caused by reason of the railroad. The statute under which

these condemnation proceedings were had reads as follows: "The commissioners shall be duly sworn to perform their duties impartially and justly and they shall inspect said real property and consider the *injury which such owner may sustain by reason of such railroad,* and they shall assess the *damages which said owner will sustain by such appropriation of his land."*

In *Blincoe v. C. O. & W. Ry. Co. supra,* condemnation proceedings were instituted condemning a strip of land across certain lots in the city of Guthrie which had been used for the purpose of a lumber yard. The proceedings necessitated the removal of the lumber, and upon the trial in the district court evidence was offered to show the necessary expenses incurred thereby. The objection to the introduction of such evidence being sustained, exceptions were duly saved, and the ruling of the court and the instruction embodying that view of the law were presented on appeal to the supreme court. Passing upon those questions presented, Mr. Justice Gillette, in speaking for the court, said: "That the owner by reason of such railroad has been put to the expense of removing the stock of lumber then on hand, is not disputed, neither can it be denied that the cost of such removal was made necessary by the condemnation of the real estate and is an injury and damage to the owner to the extent of the cost of such removal. In other words, this ruling would permit the railroad to take advantage of the owner of land, and thereby compel him to bear whatever expense may be consequent upon preserving his personal property, and yet be remediless therefor. If this shall be held to be the law, then the constitutional provision, 'Nor shall private property to be taken for public use without just compensation' becomes almost as much a sword as a shield to the private citizen, for the compulsory addition to the cost of personal property of the citizen is as much a taking as the absoption of the real estate itself." It was contended there, as here, that the expenses incurred in removing the lumber were such damages as could not be recovered in condemnation proceedings, and that the defendant should be

relegated to another action at law for the recovery thereof, but the court held: "Damages to be allowed are not limited to real estate taken and injured, but may be such damages as the owner actually sustains to either his real or personal property by such appropriation of his land." The admission of the testimony complained of was confined to the necessary incidentals in the construction of the road, and for the only purpose of showing in what way and to what extent, if any, they affected the reasonable market value of the remaining portion of defendant's tract of land. The fifth instruction complained of by the plaintiff clearly presents the limitations mentioned, and, in our judgment correctly stated the law of the case: "In determining the elements of damage, you should take into consideration the manner in which the railroad passes through and across the land in controversy and the manner in which it was constructed, the inconvenience to the owner, in passing through .the tract, and anything that would affect the usable or salable value of the land. You are not permitted to allow any damages for injuries that the land owner sustains either to his person or his property, nor for any loss occasioned by fire. Those are remote and speculative. But you may consider those matters as affecting the usable or salable value of the land. Neither can you allow for any injury by reason of floods occasioned by the construction of the railroad, but you may take into consideration the manner in which the railroad is constructed over the land for the purpose of determining whether or not the construction of the road affects the usable or salable value of the land. And as such you have a right to take into consideration the damages that the land owner has sustained. Likewise, if any dirt was thrown outside of the right of way, or what is known as 'borrow-pits,' if any were excavated, outside of the right of way you have a right to take into consideration how that affects the usable and salable value, and allow such damage as will in your judgment compensate the land owner." Thus it will be seen that the jury were instructed to consider the testimony in relation to embankments and excavations only in so far as they

affected the usable and salable value of defendant's land, and were especially admonished not to allow any damages for injury caused by floods occasioned by the construction of the road.

In *Grand Rapids R. R. Co. v. Cheeseboro* (Mich.) 42 N. W. 69, the court, by Mr. Justice Campbell, says:

"The damages in such a case must be such as to fully make good all that results directly or indirectly to the injury of the owner in the whole of the premises and interests affected, and not merely the strip taken"—citing a large number of cases, among which was the *C. R. I. & P. R. Co. v. Haise* (Mich.) 11 N. W. 215, in the opinion of which the said court said: "It need hardly be said that nothing can be fairly termed compensation which does not put the party injured in as good a condition as he would have been in if the injury had not occurred. Nothing short of this is adequate compensation." And in *Judd v. Hull Dock Co.*, 92 B. 443, it was held that: "Where the property taken was a brewery in operation, the damages included the necessary loss in finding another place of business." And they say: "The following are cases where the damage done was, as in this case, distinct from the actual taking of property from the party injured"—citing a number of English cases.

In *Railway ompany v. Teters*, 68 Ill. 144, the court says: "The design of the law is to fully compensate a party for all injury he may sustain by reason of the appropriation of his land to the use of the road and which shall grow out of or be occasioned by its location and use at that place."

In *Omaha Southern Ry. C. v. Dodd* (Neb.) 58 N. W. 289, in the opinion, the court said. "The damages to which a land owner is entitled by reason of the construction of a railroad across his farm are: First, the actual value of the land taken at the time of the taking without diminution on account of any benefit or offset whatever; second, the depreciation in value of the remainder of the farm by the appropriation of a part thereof for railway purposes and the construction and permanent operation and occupation of the railroad thereon, excluding general benefits. In

an inquiry whether and·how much the part of the farm not taken for railroad right of way is depreciated in value by the appropriation of a part, evidence as to the size of the farm, the purpose for which it was used, the improvements thereon and how located, the direction of the road crossing the farm, the cuts and fills made or to be made in the construction of the road, the width of the right of way, the height of embankments, the depth of ditches, the inconvenience in crossing the track from one part of the farm to the other, the liability of stock being killed, the danger from fires from passing trains, are all facts competent for the jury's consideration in determining the depreciation in value of the remainder of the farm," "Just compensation for land taken consists in making the owner good by an equivalent in money for the loss he actually sustains in the value of his property by being deprived of a portion of it. It includes not only the value of the land taken, but also the diminution in the value of that from which it is severed." *Laflin v. Chicago W. & N. R. C.,* 33 Fed Rep. 415; *Esch v. Chicago N. & St. Pr. Co.,* 72 Wis. 229.

In *Fremont E. & N. V. R. Co. v. Meeker* (Neb.) 44 N. W. 79, the court says: "It is proper to consider, in estimating the damages for a right of way for a railway, the manner in which the road cuts the land, the excavations and embankments and the exposure of the property to particular injuries from the proximity of the road."

In this case the construction of the road was complete at the time of the trial in the district court and evidence showing the actual existing condition was not subject to the objection of being uncertain, speculative or remote, and was properly admitted by the court.

In Lewis on Eminent Domain, § 482, it is said: "If the works are built before the assessment of damages is had the damages should be assessed on the basis of the works as constructed, even if improperly constructed, for the condemnor should not be allowed to assert its own wrong." And in section 496 the learned author says: "It would be difficult to enumerate the various

elements of damages proper to be considered when a part of a tract is taken. The shape and size of the parcel or parcels which remain, the difficulty of access of communication between the different parts, inconvenience and disfigurement caused by the taking, and interference with the drainage of the land, or with the flow of surface water, or with the water supply are recognized by all authorities as proper items to be taken into account in assessing damages. Where a railroad is laid through a farm it is proper to consider the expense in constructing necessary farm crossings, unless it is made the duty of the company to build such crossings; also, the danger to which the occupants of the farm and the stock thereon will be exposed so far as the same affects the value of the farm. Injury to grass from dirt washed from an embankment was held a proper item of damage."

In *Hayes v. Ottowa, Oswego & Fox River Valley R. R. Co.*, 54 Ill. 373, the court says, in estimating the damages and benefits to result from the construction and use of a railroad over land which has been condemned for that purpose under an act of 1852, the jury are not confined to the consideration of the state of facts as they existed at the time the land was taken, but may consider the subject in the light of the facts as they exist at the time of the trial.

In *St. Louis O. H. & R. R. v. Fowler* (Mo.) 44 S. W. 771, the supreme court of Missouri say: "The damages and benefits to the remaining land after an appropriation of a railroad right of way should be estimated according to the condition of things and the rights of the parties as they exist at the trial."

In *Wichita & E. R. R. Co. v. Kuhn*, 16 Pac. 75, the supreme court of Kansas say: "On an appeal from an assessment of damages done to a farm by reason of the appropriation of a right of way through it by a railroad company, and where it is shown at the time of the trial that the railroad is completed across the farm, it is then competent and proper to assume that the railroad was constructed as contemplated at the time of the condemn-

ation proceedings, and all damage that is apparent which will result to the injury of the farm, such as stopping the flow of surface water, forming stagnant pools along the side of or along the right of way, and the like, are elements of damage proper to go to the jury."

In *Springfield & Memphis Ry. Co. v. Rhea*, 44 Ark. 458, the court say: "Where an assessment of damages for right of way precedes the building of a railroad, the presumption is that it will be built with skill and proper precautions; but, if the road has been completed through the land at the date of the trial, the jury may consider the state of facts that existed, and from the light of the actual construction determine what the damage has been, embracing all past, present, and future damages which the location of the road may reasonably produce."

In *Walker v. Old Colony & Newport R. R.*, 103 Mass. 10, the court say: "The cuts and embankments and necessary gutters of the railroad through a tract will unavoidably modify the flow of surface water, and sometimes cause damage by keeping it back or projecting it in large quantities upon lands adjoining the road. Injury to land from such causes would seem clearly to fall within the class of effects which have been held to afford ground for the assessment of damages under the statute."

The supreme court of Minnesota in *Pfleager v. Hastings R. R. Co.*, 11 N. W. 72, say. "If the construction of a railroad across a farm lessens its value by preventing the flow of surface water from one part of the farm to another, this is a proper element to be taken into consideration in fixing the amount of compensation to which the owner is entitled. The rules of law governing the rights of adjacent owners as to the flow of surface water from the land of one on to the other have no application to such a case.

In determining the damages to a farm caused by the construction of a railroad, it is proper to take into consideration every element of damage that might be reasonably anticipated before the road is built and what really does exist and is apparent after

the road is constructed.   This includes the inconvenience of cross-
ing or raising of embankments or digging of ditches, pools of
stagnant and the obstruction of surface water by throwing it into
channels or damming it up."

    *Wichita & W. R. Co.* v. *Kuhn,* 38 Kan. 104, 16 Pac. 75;
*Weyer* v. *Chicago W. & N. R. Co.,* 68 Wis. 180; *Schuylkill River,
East Side & R. Co.* v. *John J. Kersey*   (Pa.) 7 L. R. A. 409.

    Under our statute, it was proper to consider the injury which
the owner sustained by reason of such railroad, and where the em-
bankments and excavations were caused by reason of the con-
struction of the road, as in this case, there certainly was no error
committed by the trial court in admitting the testimony in rela-
tion thereto for the purpose of showing in what way and to what
extent it affected the usable or salable value of the remaining
portion of the defendant's farm.   The above authorities, which
might be multiplied many times based upon different statutes,
it is true, show the growing tendency of the law to settle and
adjust in one action all the rights of the parties thereto.

    The fourth assignment of error challenges the ruling of the
court in refusing to submit to the jury a number of special in-
terrogatories upon the request of the plaintiff.   The only state-
ment in the record showing an exception to the ruling of the trial
court in refusing to submit the interrogatories requested appears
to be an endorsement upon the back of a paper containing the
request, which reads as follows:   "Refused and exceptions allowed.
Bayard T. Hainer."   This general exception only raises the ques-
aion of whether or not all of the interrogatories were proper and
should have been given.   If any one of the requested interroga-
tories should be improper, error committed in refusing to submit
the others is not properly presented by a general exception.   A
request for the submission of a number of questions is analogous
to a request for the giving of several instructions.   Each interrog-
atory must contain a separate and distinct inquiry of fact capable
of a direct answer, and a general exception to a refusal to give a

number of them is unavailable, unless all of them be proper. The supreme court of Kansas, in passing on a like exception taken to a number of interrogatories, in the *Coffeyville Vitrified Brick & Tile Co. v. Shanks,* 69 Kan. 306, 76 Pac. 856, say: "The defendant also asked the court to submit to the jury forty-five questions. The court struck out seventeen of them and submitted the others. It is now insisted that five of the questions stricken out should have been answered. Three of these questions were wholly immaterial under the instructions given to the jury and the foregoing conclusions respecting the law of the case, and the other two violated the rule of *Foster v. Turner,* 31 Kan. 58, 1 Pac. 145; and *Mo. Pac. Ry. Co. v. Reynolds,* 31 Kan. 132, 1 Pac. 150, that the jury should only be required to answer particular questions of fact, and need not be required to elaborate details of facts under general questions." But the assignment of error concerning this matter is not founded upon an appropriate exception. It is beyond controversy that many of the rejected questions were improper. A general exception to the refusal to give the rejected list was taken. This was not sufficient. Each special interrogatory submitted to the jury must be so framed as to present distinctly a single material fact involved in the issues of the case. *R. R. Co. v. Aderhold,* 58 Kan. 293, 49 Pac. 84. A request for the submission of a number of questions is analogous to a request for the giving of several instructions. Each one must contain a separate and independent proposition of law, and a general exception to a refusal to give a number of them is unavailable, unless all of them are proper. *Sumner v. Blair,* 9 Kan. 521; *Bailey v. Dodge,* 28 Kan. 72; *State v. Wilgus,* 32 Kan. 126, 4 Pac. 218. All the reasons for this rule apply to the submission of particular questions of fact. A defeated party can not be permitted to search through an array of proposed questions or instructions discovered to be in the record until he finds one or two sufficient to pass muster, and then to attach them to a general exception, and thereby secure the reversal of

a judgment upon a point which the district court has had no reasonable opportunity to consider and decide.

There being no other assignment of error, the judgment of the district court of Pawnee county will be affirmed.

Hainer, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.