## OIL FIELDS & SANTA FE R. CO. v. TREESE COTTON CO.

No. 9453—Opinion Filed Feb. 3, 1920.

(Syllabus by the Court.)

**1. Eminent Domain—Elements of Damages.**

In a condemnation proceeding the court may submit as an element of damages for consideration of the jury, when there is evidence adduced tending to justify it, the reasonable cost of removal of property from the lands taken, and fitting the same up in another locality.

**2. Trial—Directing Verdict.**

When the evidence adduced and all reasonable inferences to be drawn therefrom are such that all reasonable men must necessarily reach the same conclusion, then the court may direct a verdict or make a finding on any issue joined.

**3. Eminent Domain—Obstruction of Street —Elements of Damages.**

An obstruction in a street, though not in front of an abutting property owner, but in such close proximity thereto that the abutting owner's use and enjoyment is greatly interfered with and its value depreciated, is an element of damages for which suit for damages will lie.

**4. Eminent Domain—Consequential Damage —Special Damage—Street Obstruction by Railroad—Damage to Abutting Owner.**

The mere incidental inconvenience to an abutting property owner arising out of the construction of a railroad along a public highway, or an injury consequential in its nature, or one that is remote or far removed and such as is suffered by the community in general, is not an element of damages to be submitted to a jury in a condemnation proceeding in which a portion of an abutting property owner's lot was taken; but, on the other hand, if the injury, considering the use of the property taken or that remaining, is different in kind and greater in degree than that suffered by other abutting owners and is such that the egress and ingress are materially affected, then the abutting property owner has suffered a special and peculiar damage to him for which an action will lie.

**5. Trial—Refusal of Instructions Covered.**

When the instruction of the court has in substance that which is requested in a special instruction, then it is not error for the court to refuse to give the special instruction.

Error from District Court, Payne County; John P. Hickam, Judge.

Action by the Treese Cotton Company against the Oil Fields & Santa Fe Railway Company for damages for obstructing street adjacent to its property, and condemnation proceedings by the Railway company to condemn and take the street and a strip of the Cotton company's property. Actions consolidated. Appeal by Railway company from lower court's judgment in favor of Cotton Company. Affirmed.

Gibson & Hull and Robt. A. Lowry, for plaintiff in error.

Edwin R. McNeill, for defendant in error.

HIGGINS, J. The Treese Cotton Company, defendant in error, was the owner of approximately one and three-quarter acres of land situated in the city of Cushing, upon which it owned and operated a cotton gin. While this gin was being operated the Oil Fields & Santa Fe Railway Company, plaintiff in error, constructed its line of railroad along the street immediately south of the gin company's property extending its line eastward along this street and along the public highway leading to the country for a distance of more than a mile. In 1915, the gin company sued the railroad company for damages for obstructing the street south of its property. In 1917, while this suit was pending, the railroad company commenced condemnation proceedings to condemn and take the street immediately south of the gin company's property and 60 feet off the south side of the lot or tract of land upon which it operated its gin, leaving about one acre. Upon the land taken there were situated the scales, an office building, and a portion of the cotton house, and upon the portion not taken were erected the gin, well, seed house, water tank, and other necessary buildings. Prior to the taking, the gin lot was bounded on the east by a private road, on the west by the tracks of the Missouri, Kansas & Texas Railway Company, an unused road to the west, and on the south by a street, and prior to the construction of the road the travel from Yale came by this gin, and it is contended that three-fourths of the cotton entering the town came over this street. After the taking, the egress and ingress and

use of the street to the south were cut off, leaving the other boundaries as heretofore described. The gin faced the private road, and the only public thoroughfare left was the unused road to the back and west of the gin. On the portion of the lot left, to the west of the gin house, there had been a pond · in time past and the ground was low and damp. In the condemnation proceedings the gin company was awarded damages in the sum of $820, from which award an appeal was taken to the district court. When the appeal came on to be heard, by agreement of the parties, they were consolidated and both tried at the same time. At the request of the railroad company the jury was by the court instructed that in assessing the damages they should do so as if the condemnation case alone were being tried. To this instruction no exception was taken by the gin company. The jury assessed the damages at $2,650, and after deducting the award of $820 therefrom, the court entered up a judgment for the gin company for $1,850, from which judgment plaintiff in error appeals to this court.

The plaintiff in error sets forth three propositions why this cause should be reversed. First, error of the court in its instructions as to measure of damages; second, error of the court in admitting evidence of· the obstruction of the street beyond the property line of the gin company; and, third, for failure to give certain instructions.

As to the first proposition, the instructions as to the measure of damages are as follows:

"No. 3. You are instructed that the issue for you to determine in this case is the amount of damages, the land owner, Treese Cotton Co., had sustained by reason of the appropriation of the said strip of land ninety-three feet wide and extending along the south portion of said strip of land, and with the injury that the landowner has sustained to the remaining portion of the land not condemned for right of way purposes, together with such damages as the owner actually sustained as to the real or personal property by such appropriation of its land.

"No. 4. You are instructed that, in determining the amount of compensation to be awarded to the Treese Cotton Company, in this case, you may properly take into consideration all evidence tending to show the actual value of the premises of what it is proposed to deprive it of, the actual loss to be suffered by the Treese Cotton Company, from the loss, destruction, or depreciation of the improvements placed by them on this property especially adapted to the conduct of its business, the reasonable cost of removal, and of refitting in other locality for the further conduct of business as shown by the evidence.

"No. 5. In determining what is the value of the property in controversy, however, the law does not permit you to fix speculative or fancy values upon it, but the law requires you to determine the reasonable market value of the property if the owner was offering to sell on the usual terms and the purchaser desiring to buy. The phrase 'market value' does not mean what you may ask for it, but said phrase means the fair selling value of the property in the market, either in its present condition or any condition to which it is susceptible of being changed."

The plaintiff in error requested this instruction:

"You are instructed that the measure of damages in this case is the fair market value of the property taken at the time of the taking thereof. And should you find in addition that by reason of the taking of a portion of the defendant's property, the market value of ·the remaining portion of the defendant's property has been and will be diminished, that difference in value would be the measure of damages to the remaining portion, if any, by reason of such taking. In other words, the difference between the market value of defendant's property before the taking thereof and market value of the remaining portion thereof after the taking, and after the railroad has been built and in operation, is the measure of damages, if any, in this cause."

It will be seen that, taking the court's instruction as a whole, there is no fundamental difference between the instructions given by the court and the instruction requested by the plaintiff in error, further than that instruction given by the court wherein the reasonable cost of removal of the gin and fitting it up on another locality is given as an element of damages to be considered by the jury. It is the settled law of this state that when the necessity exists for the removal of property from lands taken in a condemnation proceeding, the reasonable cost of removal is a proper element of damages to be considered, and it is so held in Blinco v. Choctaw, Okla. & W. R. Co., 16 Okla. 286, 83 Pac. 903. In that case the trial court refused to submit to the jury the cost of removing a lumber yard from the lot taken, and this court reversed the cause, holding that the cost of removal was a proper element of damages. The instructions of the court follow the law as laid down in Arkansas Valley & Western R. Co. v. Witt, 19 Okla. 262, 91 Pac. 897, and Blinco v. Choctaw, Okla. & W. R. Co., supra.

The plaintiff in error complains of instruction No. 4, for the reason that the court assumed therein the necessity of a removal of the gin. The defendant in error contends that if this be error, then it is cured by in-

struction No. 3. We find that the language in instruction No. 4 is such that the court apparently assumed the necessity of a removal of the gin, and that if this be error, then the same is not corrected by instruction No. 3. In order to ascertain if there be error in this assumption on the part of the court, it will be necessary to search the record and consider all evidence adduced, throwing any light upon the necessity of removal of the gin to another location.

The evidence conclusively showed that the portion of the lot left upon which the gin was situated consisted of about one acre of land, hedged in on the north and south between railroads, a private road to the east and an unused street to the west. All the witnesses testifying for defendant in error as to the practicability of further operation of the gin on the portion of ground left, testified that the same was not practicable. Witnesses were called by the railroad company who testified that they operated gins on less land than the gin in question, but upon cross-examination testified their gin was located along one line of road with free access to the streets around the gin, together with the use of same. When shown a map of the gin lot after a portion was taken, they, too, agreed that the location for further operation of the gin thereon was undesirable. The evidence tended to show that in the busy gin season frequently as many as 50 or 60 wagons are standing at a gin waiting to be unloaded, and that the streets are used not only for wagons, but to store the bales of cotton.

We are under the belief that, under the evidence adduced, all reasonable men would reach the conclusion that it was no longer practicable to operate a gin upon the portion of the ground left after the sixty-foot strip was taken away.

In regard to defendant's second proposition, in which it complains of the admission of evidence of the obstruction of the street beyond the property of the plaintiff. The evidence admitted was to the effect that the construction of the railroad along the highway south of the property in controversy and immediately east thereof, had rendered the highway impassable and made the gin inaccessible for this purpose, turning the travel, which comprised 75 per cent of the cotton coming into the city, along other routes and to other places of the city. The question of law as to whether or not damages can be recovered for obstructing a highway beyond the property in the controversy seems to have been well considered and ably presented by Mr. Justice Hayes in the case of McKay v. City of Enid, 26 Okla. 275, 109 Pac. 520, in which the court, reviewing the law of special and peculiar damages, said:

"The authorities generally hold that the injury resulting from an obstruction in a street or public highway in front of an abutting owner's property which interferes with his ingress or egress to and from his property is a special injury to him, and many authorities hold that, although the obstruction be not in front of the abutting property, if it be in such proximity to it upon the street or highway upon which the property abuts, that the abutting owner's use and enjoyment of the property is destroyed or greatly interfered with, and its value depreciated this injury is special and peculiar to him. And it has been held that injury to property, the access to which has been interfered with by an obstruction, although the property be not adjoining the highway or street upon which the obstruction exists, if such street or highway is the owner's only means of access to the property, is a special injury and the owner may recover therefor."

It is contended by the railroad company that damages, if any, caused by the obstruction in the street beyond the property of plaintiff, were merely consequential in their nature, for which no recovery can be had, and the injury, if any suffered, was suffered by the community in general. In the case at bar the defendant was operating a gin, and the successful operation thereof required not only that the street in front of its place be not obstructed, but that the street and highway leading thereto be also unobstructed. In the case at bar, we believe, that the damages were peculiar to plaintiff and it has suffered special damages because of the nature of the business engaged in and the injury as disclosed by the evidence; that the injury complained of was different in kind and greater in degree than that suffered by other abutting property owners of the community. We conclude that the trial court did not err in admitting the evidence of the obstruction by the railroad of the highway beyond the property owned by the plaintiff company, considering the nature and the use of the plaintiff's property and the special kind of business it was engaged in. The continual use of the street beyond its property was a necessary element to the carrying on of such business, and an interference or material interruption of such use was an element of an injury upon which a recovery may be had. The weight of authority allows no damages for such interference or obstruction where same is remote or far removed, or similar in character to that suffered by the community in general, although it admits the existence of injury; but on the other hand the rule has been to recognize damages to the owner's right of use in his property

where such obstruction or interference even beyond the same has materially interfered, in such cases where such uses are distinguished from that of the community in general in kind and degree, as is true in this case. We believe this rule is based on justice, for cases may easily arise where an obstruction of this use would constitute a taking of plaintiff's property, or even a total destruction of his business.

In Foster Lumber Co. v. Arkansas Valley & W. R. Co., 20 Okla. 583, 100 Pac. 1110, it is stated:

"Such right is one peculiar to itself, in which the general public has no interest, and exists in the nature of an incorporated hereditament attached to said lots, and is a valuable property right, one that under some circumstances, may constitute the greater element of value of the abutting property, and is one that cannot be taken away or materially impaired without compensation."

We, therefore, hold that the court committed no error in admitting evidence of the obstruction by the railroad beyond the property line of defendant in error.

Regarding plaintiff in error's third proposition complained of, that the court erred in refusing to give requested instructions Nos. 1 and 2. These instructions referred to were in effect to allow no damages for injury to the rights of ingress and egress, and that the measure of damages was the same as that which would be determined in the appeal of the condemnation case.

As to impairment of the right of ingress and egress being considered as a part of the injury suffered, we believe this phase of the case has already been sufficiently discussed. And plaintiff in error's contention that the court committed material error in refusing to give these instructions is, regarding the measure of damages, especially unsound when considered in comparison with the instructions that were actually given the jury by the court. Requested instruction No. 1, the refusal to give which was assigned as a material error, was as follows:

"You are instructed that since the filing of the suit by the Treese Cotton Company, against the defendant for damages by reason of the obstruction of right of ingress and egress, the defendant has commenced proceedings to condemn a strip sixty feet wide across that portion of the Treese Cotton Company's property adjacent to the road in which its tracks were originally laid; and the two cases have been consolidated. The measure of Treese Cotton Company's damages, therefore, are the same as though you were determining the damages in the appeal in the condemnation case alone."

The court in its instructions to the jury said:

"You are instructed that the Oil Fields & Santa Fe Railroad since the filing of the suit by the Treese Cotton Company as above set forth, against the defendant, the defendant has commenced proceedings to condemn a strip of land across that portion of the Treese Cotton Company's property adjacent to the road to which its tracks were originally laid and the two cases have now been consolidated. The measure of damages, if any, of the Treese Cotton Company is the same as though you were determining the damages in the appeal in the condemnation case alone."

It will, therefore, be easily seen that almost the identical language requested was employed by the court in instructing the jury, and that there is clearly no ground for complaint by appellant.

The judgment is affirmed.

OWEN, C. J., and SHARP, PITCHFORD, JOHNSON, and HARRISON, JJ., concur.

BAILEY, J., not participating; McNEILL, J., disqualified.