**C. M. DRIVER and Jewel Driver,
Plaintiffs in Error,**

v.

**OKLAHOMA TURNPIKE AUTHORITY,
Defendant in Error.**

No. 38092.

Supreme Court of Oklahoma.

May 12, 1959.

Rehearing Denied Sept. 15, 1959.

Harve N. Langley, Pryor, E. M. Knight,
Spavinaw, for plaintiffs in error.

H. Tom Kight, Dennis Bushyhead, Claremore, Richard L. Wheatley, Vinita, Looney, Watts, Looney & Nichols, Anna B. Otter, Oklahoma City, for defendant in error.

BERRY, Justice.

Oklahoma Turnpike Authority, hereafter referred to as "Turnpike Authority", brought this action in condemnation against C. M. Driver and Jewel Driver, husband and wife, hereafter referred to as "defendants", to condemn for turnpike purposes 12.68 acres of defendants' 168-acre dairy farm lying in Rogers County, Oklahoma.

The trial court appointed commissioners to fix damages resulting to defendants' dairy farm from Turnpike Authority taking 12.68. acres thereof. The commissioners fixed defendants' damages at $19,000. Turnpike Authority and defendants each asked for a jury trial which was granted. The trial resulted in a verdict in defendants' favor in the amount of $13,190, and judgment was subsequently entered for said amount. Defendants filed a motion for new trial and from order denying said motion perfected this appeal:

Defendants assert that the trial court erred in (a) erroneously describing the property involved in the instructions; (b) excluding evidence relative to the value of dairy improvements before and after taking of the 12.68 acres; (c) admitting evidence relative to Turnpike Authority's offer to make available a passageway for defendants' stock; (d) denying defendants' motion for new trial and particularly that portion of said motion based on newly-discovered evidence. For reasons hereafter made apparent, we are of the opinion that it is only necessary to consider contention following (b) above, in order to dispose of this appeal.

At the time the 12.68 acres were taken in July, 1955, the farm in controversy was used as a dairy farm and had been so used for a long period of time. The record shows that defendants kept approximately 100 head of dairy cows on the farm and daily milked approximately 70 of said cows; that following the taking of said 12.68 acres

it was not economically feasible to use the farm as a dairy farm and for said reason the dairy cows were sold. The defendants' contention that the farm was not suitable for dairy purposes was based on the proposition that the turnpike split that portion of the farm upon which the dairy improvements were located off from the remainder of the farm and the dairy cows could not pass from the improved portion of the farm to the unimproved portion.

The record develops that numerous buildings had been built on the farm for use in the dairy business and defendants contend that as a result of the farm being made unfit for dairy purposes the buildings so built were in fact rendered useless to their great financial detriment. In an effort to establish said contention, defendants undertook to establish by a competent witness who was engaged in the building business, the value of the buildings used only for dairy purposes at the time the 12.68 acres were taken by proving replacement cost and original cost of same and also that assuming the buildings could not be used for dairy purposes the value of the buildings before and following the taking. The trial court refused to permit defendants to make said proof on the grounds that the measure of damages was the value of the farm before taking said 12.68 acres and the value thereafter.

In this jurisdiction by force of constitutional provision (Art. 2, Sec. 23) the owner of private property taken "or damaged" for private use is entitled, because of the quoted phrase, to consequential damages resulting from an indirect taking. Therefore, if the taking here under consideration served to render the buildings used for dairy purposes useless in whole or in part, this was an element of damages that the jury was entitled to take directly into consideration in determining defendants' damages. Turnpike Authority does not dispute that this is the law. It does stoutly contend, however, that the jury must be said to have taken said element of damages into consideration because numerous witnesses testified to the market value

of the dairy farm before and after the taking. We are unable to agree.

In State ex rel. Department of Highways v. Weaver, Okl., 297 P.2d 549, 550, complaint was made that the trial court erred in permitting a witness to state his opinion as to the cost of fences and ponds which were directly affected by the land taken; that the measure of damages was the value of the ranch there involved before and after the taking. In holding otherwise we had this to say in the first paragraph of the syllabus:

"1. Where a part only of a tract of land is condemned and damages are sought for the value of that taken and consequential damages to that not taken, the measure of damages is the difference between the fair market value of the whole property immediately before the taking and the fair market value of the portion left immediately after the taking; and while evidence to establish any additional damage beyond that is not permissible, evidence may be admitted of specific elements which contribute to the depreciation in market value."

See also Grand River Dam Authority v. Gray, 192 Okl. 547, 138 P.2d 100.

We had this to say in Oil Fields & S. F. R. Co. v. Treese Cotton Co., 78 Okl. 25, 26, 187 P. 201, 203:

"It is the settled law of this state that, when the necessity exists for the removal of property from lands taken in a condemnation proceeding, the reasonable cost of removal is a proper element of damages to be considered, and is so held in Blincoe v. Choctaw, Okla. & W. Ry. Co., 16 Okl. 286, 83 P. 903, 4 L.R.A.,N.S., 890, 8 Ann.Cas. 689. In that case the trial court refused to submit to the jury the cost of removing a lumber yard from the lot taken; this court reversed the cause, holding that the cost of removal was a proper element of damages. The instructions of the court follow the law as laid down in Arkansas Valley & Western Ry. Co. v. Witt, 19 Okl. 262, 91 P. 897, 13 L.R.A.,N.S., 237, and Blincoe v. Choctaw, Okla. & W. Ry. Co., supra."

In Tulsa County Drainage Dist. No. 12 v. Stroud, 198 Okl. 688, 181 P.2d 1000, 1001, it is pointed out that "Witnesses produced by plaintiff testified that the value of the land taken was from $400 to $600, and that the remainder of the tract suffered no damage by reason of the taking. The defendant testified that his tourist camp was a profitable enterprise; that the taking of the 80 foot strip deprived him of any land upon which he could expand his camp as he had originally planned, and that the operation of his camp with the additional units constructed on the 80 foot strip would have been much more profitable than it was at the time of the taking. Plaintiff says that the admission of this evidence was erroneous, and that the evidence should have been confined to the actual value of the land taken plus damages, if any, to the remainder not taken, and that evidence showing the expense of building and operating defendant's tourist camp, the extent and value of the business conducted, and the profits derived therefrom was incompetent." In rejecting said contention we held as follows in the first paragraph of the syllabus:

"1. In an eminent domain proceeding seeking to condemn a portion of a tract of land for a drainage ditch, evidence showing that the land was acquired by the owner for a particular purpose, and for which it was suitable, and showing the value of the entire tract for such purpose prior to the taking, and the value of the part remaining after the taking, is admissible."

The trial court instructed the jury that they were entitled to consider "all uses to which the land is adapted and might, in reason, be applied, which appreciably affects the market value thereof" and that the jury could consider "impairment or depreciation of value, if any, done to the remaining property." Assuming that the

instructions were sufficient to overcome any erroneous impression that the jury may have received through the trial court refusing to permit defendants to directly prove damages to buildings used only as dairy buildings, which assumption is speculative, the defendants were nevertheless deprived of offering direct proof "of specific elements which contributed to the depreciation in market value" of the dairy farm (297 P.2d 549, supra), because of Turnpike Authority taking 12.68 acres of said farm, which depreciation or obsolescence loss, if the jury believed testimony offered by defendants, was sizable. We are inclined to believe that this error resulted in defendants not having the full and fair trial that they were entitled to, and for said reason the trial court erred in not granting defendants a new trial herein.

Reversed and remanded for new trial.