**OKLAHOMA TURNPIKE AUTHORITY,**
Plaintiff in Error,

v.

**John A. BURK and Dorothy Burk, husband and wife, Nellie Cunningham, a widow, Roxie McFarland and Annabelle McFarland, husband and wife, and R. D. McFarland, substituted as successor in interest of Charles G. McFarland, Deceased, Defendants in Error.**

No. 41259.

Supreme Court of Oklahoma.

June 7, 1966.

Sam Wilhite, Anadarko, Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, for plaintiff in error.

Sam M. Williams, Walt Allen, Chickasha, for defendants in error.

BERRY, Justice.

This is an appeal from a judgment rendered upon a jury verdict in a condemnation action.

For many years defendants had owned a described quarter section of land southeast of the town of Cyril and near the Cement oil field. A live stream, (North Fork of the Little Washita) known locally as Chetony Creek, traversed the land from north to south. The farm contained 70–75 acres of crop land, about half of which was bottom land and quite productive. The bridge spanning Chetony Creek as it crossed the east-west section line on the north of defendants' farm had been washed out for many years. Defendants had built a rock crossing which permitted access to the east part of the land for farm machinery and equipment. A bridge over a canyon on the section line to the west of their property also had been washed out and had not been replaced. This section line had been closed and a dam constructed on defendants' property, and the public was allowed to use the dam as a roadway. Defendants utilized the dam crossing as a means of access to the south part of their land. The two routes mentioned provided the only means of access to the south part of their farm, as unbridged canyons to the east, south and southwest precluded access from those directions.

Pursuant to its authority plaintiff condemned 30.09 acres for turnpike purposes. The land condemned bisected defendants' farm diagonally from northeast to southwest, leaving approximately 77 acres south and east of the turnpike. The condemnation proceedings purportedly reserved defendants a passageway under the turnpike bridge crossing Chetony Creek, as a means of providing access from north portion of the remaining land to that south of the highway. It was stipulated the land south of the turnpike had been made inaccessible because of the manner in which the creek banks had been sloped and rip-rapped with boulders under the bridge. The creek was boggy and unsuitable for a cattle crossing under this bridge.

During construction the turnpike dammed Chetony Creek north of the center of defendants' land. This caused the stream to overflow the rock crossing and made it impassable. Rains also caused the crossing area to silt over and become boggy and overgrown with vegetation. Thus on the part of the land north of the turnpike defendants had no means of reaching the land east of the creek.

Plaintiff sued to condemn the defendants' property, commissioners were appointed and returned their report assessing defendants' damages in the amount of $7,562.70, as a result of the appropriation. The report also showed there were no growing crops, the wheat crop for the year 1962 having been sold. Plaintiff and defendants thereafter filed demands for jury trial from the commissioners' award. The case was tried to a jury which also viewed the premises. Under instructions from the trial court, certain of which plaintiff asserts were erroneous, the jury returned a verdict fixing $15,000.00 as compensation for defendants' damages resulting from the condemnation.

The assignments of error for reversal are presented under three propositions. The first contention is that the trial court erred in permitting defendants to introduce evidence pertaining to alleged damage to any mineral interest under defendants' land.

The argument is that there was no proof minerals were present under the land. And, because the testimony only disclosed a possibility of oil and gas being present, it was reversible error to admit evidence of imaginary use or speculative schemes. This argument is derived from the text statement in 4 Nichols, Eminent Domain, § 13.22.

■ This argument is without substantial merit. The evidence showed defendants' land was adjacent to an established oil area. This evidence was offered, not for the purpose of showing damages resulting from the taking of any minerals by condemnation, but to show that the damage to the property by destruction of access to the remainder decreased the value of the mineral interest, even to the extent of preventing possible development.

■■ This Court often has held the elements of damage include all damages arising from exercise of the right of eminent domain, which results in diminution of the value of private property. Public Service Co. of Oklahoma v. Raburn et al., 162 Okl. 81, 19 P.2d 167. Thus the inconvenience of the use of the remainder is an item or factor to be considered by the jury. Incorporated Town of Sallisaw v. Priest, 61 Okl. 9, 159 P. 1093; Grand River Dam Authority v. Gray, 192 Okl. 547, 138 P.2d 100, and cases therein cited.

■ It is recognized generally that in fixing damages resulting from exercise of the right of eminent domain, value of the property may be determined by reference to any and all purposes to which the property may be devoted. Grand Hydro v. Grand River Dam Authority, 192 Okl. 693, 139 P.2d 798. This sometimes is denominated the rule of "value for all available uses." Davidson County, etc. v. First Am. Nat. Bank, 202 Tenn. 9, 301 S.W.2d 905. Also see annotation 156 A.L.R. 1416, dealing with the subject of determination of market value in eminent domain proceedings, as affected by mineral deposits or similar conditions.

■ Plaintiff's second contention asserts error of the trial court in giving certain instructions. The argument again is directed at reference to the minerals made therein. The claim is that since the condemnor acquired only a right of way the evidence as to value of the mineral interest should have been excluded. No issue was involved as to the taking of any minerals. There was competent testimony concerning the probable presence and value of oil and gas in the vicinity, and that such value had been lessened because of lack of accessibility to the remainder of the acreage as a result of the condemnation of a part of the land. We recognize that in condemnation proceedings evidence which shows adaptability of land for a particular use is admissible upon the question of market value. City of Tulsa v. Lloyd, 129 Okl. 27, 263 P. 152; City of Tulsa v. Biles, Okl., 360 P.2d 723.

■ Evidence upon such matters is considered legitimate evidence, not as affording a measure of recovery but as explanation of and supportive of the estimates of market value. This limitation upon such evidence is that, as in all cases involving expert testimony, the jury should be instructed that factors considered by the expert do not constitute direct evidence of fair market value of the land, but are to be considered for determining what weight is to be accorded the expert's testimony in his ultimate opinion of the fair market value. See Cade v. United States, (CCA4) 213 F.2d 138; Nat'l Brick Co. v. United States, 76 U.S.App.D.C. 329, 131 F.2d 30; State of Utah By and Through Road Commission v. Noble, 6 Utah 2d 40, 305 P.2d 495.

■ The trial court's instructions advised the jury consideration could be given to all present and prospective uses to which the land might be put in determining value, but they should consider and give weight only to matters actually affecting the market value. In this connection the court specified although no minerals were being taken, it was proper to consider defendants' restricted use of mineral rights, if found as a fact, as affecting the fair market value

of the property. In Driver v. Oklahoma Turnpike Authority, Okl., 343 P.2d 1079, we held that evidence relative to specific elements which contributed to depreciation in market value of the land condemned was admissible. Loss or destruction of access to property resulting from closing of a public road is held to constitute special injury for which damages may be allowed. Grand River Dam Authority v. Misenhimer, 195 Okl. 682, 161 P.2d 757. No different rule should apply when the right of access to all parts of a landowner's property is destroyed by the condemnor. See also 38 A.L.R. 809; 4 Nichols, Eminent Domain § 13.22.

■ We decline consideration of the argument relative to error in admitting evidence of mineral value and instructions given which is based upon plaintiff's evidence of willingness to construct defendants an access bridge under the turnpike. Plaintiff's condemnation proceedings purportedly reserved to defendants a right of passage under the turnpike, including access to the remaining lands. Damages accruing from taking of private property by eminent domain are to be determined at the time the property is taken. Arkansas Valley W. Ry. Co. v. Witt, 19 Okl. 262, 91 P. 897, 13 L.R.A.,N.S., 237. Improvements or changes proffered by the condemnor after taking, as a means of attempting to mitigate the damages, provide no basis for reducing the damages, which must be determined as of the time of the taking.

Plaintiff further contends the verdict was excessive and resulted from bias and prejudice. The argument advances three grounds in an effort to support this contention. The first reiterates the argument relative to defendants' evidence of damages to mineral interests and requires no further discussion.

■ The second ground is derived from a statement in 4 Nichols, Eminent Domain § 14.243, to the effect that some cases hold inconvenience in use of land remaining after part of the land is taken is too speculative and insubstantial to merit consideration. Concededly this is correct. However, in Oklahoma the rule long applied is that the jury is entitled to consider inconvenience, which interferes with the owner's use and enjoyment of his property, in assessing damages. St. Louis, E. R. & W. Ry. Co. v. Oliver, 17 Okl. 589, 87 P. 423, 10 Ann.Cas. 748; Grand River Dam Authority v. Gray, supra; Driver v. Oklahoma Turnpike Authority, supra.

■ The third ground urged as showing bias and prejudice is derived from plaintiff's own interpretation of the weight and meaning of the evidence of value, especially upon the basis of comparison between prices paid for other farms in the general area as shown by plaintiff's evidence. So far as shown by this record, the opinion testimony concerning land values given in defendants' behalf came from witnesses as fully qualified as those who testified for plaintiff. The damages awarded defendants as condemnation damages were within the limits defined by witnesses qualified to testify. The weight and credibility of the expert testimony was solely for the jury to determine, whose finding will not be disturbed on appeal. Oklahoma Turnpike Authority v. Daniel, Okl., 398 P.2d 515; City of McAlester v. Delciello, Okl., 412 P.2d 623.

Judgment affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and HODGES, JJ., concur.