1999 OK CIV APP 62

**The CITY OF OKLAHOMA CITY, a municipal corporation, Plaintiff/Appellant,**

v.

**W.E. HAMILTON and Imogene Hamilton, husband and wife; also d/b/a Allstar Transfer and Storage Co. and Allstar Plastercraft Shop, Defendants/Appellees,**

Forrest "Butch" Freeman, as Treasurer of Oklahoma County, Oklahoma, and Shirley Darrell, F.G. "Buck" Buchanan, and Stuart Earnest, Sr., as Board of County Commissioners, Oklahoma County, Oklahoma, Defendants.

No. 90,737.

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 8, 1999.

Rehearing Denied March 26, 1999.

Certiorari Denied May 19, 1999.

William O. West, Daniel T. Brummitt, Jerry R. Fent, Oklahoma City, Oklahoma, For Plaintiff/Appellant.

Thomas Keltner, Oklahoma City, Oklahoma, and Michael J. Harkey, Oklahoma City, Oklahoma, For Defendants/Appellees.

## OPINION

CARL B. JONES, Chief Judge:

¶1 The sole issue presented in this eminent domain case is whether the trial court correctly allowed the jury to include in the condemnation award, in addition to the value of the condemned land and building, the costs which the landowners incurred to move property owned by others which was located there. We hold, under the circumstances of this case, that the additional award was proper.

¶2 Appellant City of Oklahoma City [City] commenced this action in 1995 to acquire a piece of property near the "Bricktown" section of the city for use in one part of the several public projects collectively known as the Metropolitan Area Projects or more familiarly by its acronym "MAPS." Located on the property was a warehouse where Appellees W.E. and Imogene Hamilton operated two small businesses, one a moving and storage business. Appellees had property stored in the warehouse which belonged to third parties, and some belonging to them.

¶3 Commissioners were appointed and fixed the value of the land and warehouse at $62,000. Both Appellees and City demanded a jury trial. The jury was instructed that it could award as "just compensation" for taking of Appellees' property "the amount ... which the owners are entitled to receive by reason of the appropriation of the property

... together with the reasonable value of the expenses necessary to move all of the personal property." The jury fixed the value of the Appellees' building and land at $85,000 and decided that Appellees were entitled to recover just over $60,000 for "moving expenses." From judgment entered on the verdict, City appeals.

¶4 City argues the trial court judgment should be reversed because: (1) the state constitution, Okla. Const., art. II, § 24, limited Appellees' recovery to value of the land and the building situated there; (2) adding moving costs to a condemnation award would violate Okla. Const., art. X, § 17; (3) loss of business income is not allowed; (4) the trial court lacked jurisdiction to award moving expenses in addition to the value of the land and building; and (5) there is no statutory authority for such an award. City also seeks a corresponding reduction in the prevailing party attorney fees awarded to Appellees.

■ ¶5 Upon review of judgment entered after a jury verdict for damages resulting from condemnation of private property for public use, the appellate court will not substitute its own conclusions for those reached by the jury. The verdict must not be disturbed if it is supported by competent evidence. *Oklahoma City Urban Renewal Auth. v. Lindauer,* 1975 OK 58, ¶15, 534 P.2d 682, 685; *Eberle v. State ex rel. Dept. of Highways,* 1963 OK 224, ¶16, 365 P.2d 868, 871–72; *City of Cushing v. Pote,* 128 Okla. 303, 262 P. 1070, 1071 (1928).

¶6 In *Blincoe v. Choctaw, Oklahoma & Western R. Co.,* 16 Okla. 286, 83 P. 903, 4 L.R.A. (N.S.) 890, 8 Ann.Cas. 689 (1905), the railroad brought an action under the railroad condemnation statute [1] to condemn two out of three lots which the landowner had been using as a lumber yard. Appointed commissioners reported the damages suffered by the landowner, including the cost of moving lumber from the yard to the adjacent lot. At trial, the court refused to allow the landowner to submit evidence of the expense of moving the lumber, and instructed the jury it could not award any amount for such expense. After a lengthy review of authorities

from federal and state jurisdictions, finding no consensus, the Supreme Court reversed. The court stated its conclusion in these words:

"That the owner 'by reason of such railroad' has been put to the expense of removing the stock of lumber then on hand is not disputed; neither can it be denied that the cost of such removal was made necessary by the condemnation of the real estate, and is an injury and damage to the owner to the extent of the cost of such removal. In other words, this ruling would permit the railroad to take the owner's land and thereby compel him to bear whatever expense may be consequent upon preserving the personal property, and yet be remediless therefor. If this shall be held to be the law, then the constitutional provision, 'nor shall private property be taken for public use without just compensation,' becomes almost as much a sword as a shield to the private citizen, for the compulsory addition to the cost of the personal property of the citizen is as much a taking as the absorption of the real estate itself."

*Id.,* 83 P. at 907. *See also Driver v. Oklahoma Turnpike Auth.,* 1959 OK 88, ¶8, 343 P.2d 1079, 1081.

¶7 Fifteen years after *Blincoe,* in *Oil Fields & Santa Fe Ry. Co. v. Treese Cotton Co.,* 78 Okla. 25, 187 P. 201 (1920), the court considered another railroad condemnation case. The railroad sought to condemn part of a parcel where the owner operated a cotton gin business. On the property taken there was an office building, scales, and a portion of the cotton house. The gin itself and other improvements were located on the part of the property not taken. Witnesses testified that it was not practicable to operate the gin on the remaining part of the property. The jury was instructed that it could consider, in addition to the other elements of compensation, "the reasonable cost of removal, and of refitting in [an]other locality for the further conduct of business." The court, citing *Blincoe,* said, "It is the settled law of this state that, when the necessity exists for the removal of property from lands taken in

---

1. *See now* 66 O.S.1991 § 53.

a condemnation proceeding, the reasonable cost of removal is a proper element of damages to be considered by the jury ..." *Treese Cotton,* 187 P. at 203. Without extended discussion, the court held that reasonable jurors could believe further operation of the gin on the remaining portion of the property was not feasible, and affirmed the jury award.

¶ 8 Article II, § 24 of the Oklahoma Constitution begins:

"Private property shall not be taken or damaged for public use without just compensation. *Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken. ...*"

The emphasized portion of § 24 just quoted was added by constitutional amendment in 1990. *See Williams Nat. Gas Co. v. Perkins,* 1997 OK 72, ¶ 4, 952 P.2d 483, 487. City characterizes this case as a "total taking," a label it uses to refer to condemnation of the warehouse and the entire parcel of land where the warehouse sat, to differentiate this case from one involving only a "partial taking." The latter phrase has been used in cases after the amendment to § 24 to describe taking of a part of the condemnee's property. In those cases, the "just compensation" to which the condemnee is entitled has been defined as the fair market value of the property taken, plus the injury to the property not taken. *See Perkins,* 1997 OK 72 at ¶ 12, 952 P.2d at 487. "Because the phrase 'any injury to any part of the property not taken' is meaningless if applied only to takings of an entire parcel, section 24 must be read to apply to partial takings as well as taking of entire parcels of property." *Id.,* 1997 OK 72, ¶ 4, 952 P.2d at 486.

¶ 9 City places particular emphasis on the distinction between total and partial takings, arguing that relocation costs are not a proper element of damage when there is a total taking of an entire parcel. However, *Blincoe* and *Treese Cotton* are binding precedents which authorize such recovery in either a partial or total taking case. We do not agree with City that, because only two out of three lots were taken, *Blincoe* involved a partial taking. The railroad took all of both tracts being used as a lumber yard. Furthermore, Article II, § 24 by its very terms, does not speak to only real property, nor is it limited to total takings of property.

¶ 10 In its second proposition, City argues that an award of moving costs would violate Article X, § 17 of the Oklahoma Constitution. Section 17 proscribes legislative authorization to a governmental entity "to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to[,] any corporation, association, or individual." The provision was intended to prevent public investment in private enterprises. *Lawrence v. Schellstede,* 1960 OK 10, ¶ 24, 348 P.2d 1078, 1082; *Rural Water Dist. No. 3 v. Antlers Pub. Works Auth.,* 1993 OK CIV APP 185, ¶ 8, 866 P.2d 458, 460. City suggests that, if Appellees are permitted to recover the costs of moving the bailed property stored in their warehouse to another location, it would be "the same as a friendly private purchase of a fee simple title." We do not agree. Comparison of this case with a "friendly private purchase" implies a hidden process. There is no hidden process here. City has not cited any evidence in the trial record to suggest that there was, in fact, a "friendly private purchase." And, paying compensation authorized by the Constitution and by statutes is not an investment in private enterprise.

¶ 11 Third, City argues that "loss of business income" may not be recovered as a separate element of damage in an eminent domain case. For that proposition, City cites several cases, none of which we find applicable here.[2] Appellees did not ask the City to pay for loss of income from their business. Loss of business income is not in any way comparable to the costs of relocating personal property of others stored at the condemned property.

2.  *State ex rel. Dept. of Highways v. Bowles,* 1970 OK 129, 472 P.2d 896; *State ex rel. Dept. of Highways v. Robb,* 1969 OK 49, 454 P.2d 313;

*Finley v. Board of County Comm'rs,* 1955 OK 321, 291 P.2d 333; and *Kelly v. Oklahoma Turnpike Auth.,* 1954 OK 112, 269 P.2d 359.

¶ 12 The city's "jurisdictional" argument is based its assertion that relocation expenses are not allowed in so-called "total taking" cases. We have dismissed the importance of that distinction earlier, and will not reconsider it here. We acknowledge there is, in the law of the various states, a distinction made on the basis of total versus partial takings, but this jurisdiction is bound by the tenets of our Constitutional provision as previously discussed, and thus those authorities are not applicable to the case at hand.

¶ 13 City's final three propositions discuss the statutes which define just compensation and allow recovery of various incidental expenses when property is taken for public use. *See* 27 O.S.1991 §§ 9–16. Section 13(5) of that title requires, to the greatest extent practicable, at least 90 days' written notice before having to relocate a business or farm operation, and specifically refers to the Oklahoma Relocation Assistance Act, 63 O.S.1991 §§ 1092.1, 1092.2, 1093–99. The Act authorizes payments and other assistance in order to comply with the analogous federal act.[3]

■ ¶ 14 City's argument is that the policies enumerated in § 13 make no mention of the sort of relocation expenses awarded in the present case. And, City points out that § 13 has been construed as setting forth merely guidelines, and not creating enforceable rights. *See Western Farmers Elec. Coop. v. Willard,* 1986 OK CIV APP 5, ¶¶ 12–13, 726 P.2d 361, 363, *cert. denied* (§ 13 is statement of policy only and does not create condition precedent). We agree with City that § 13(5) does not create a right to moving expenses. *See* 27 O.S.1991 § 15. However, Appellees' recovery of those expenses does not depend upon § 13(5).

■ ¶ 15 We also agree with City that the state and federal relocation assistance acts do not apply to taking of property for a project in which there is no investment of federal funds. There is some indication in the record that Appellees intended to present some evidence of federal involvement, but the only transcribed portion of the trial record makes no mention of it. Again, however, Appellees' recovery in this case does not depend on assistance payments authorized by those acts.

¶ 16 We hold that the trial court did not err by admitting evidence of the cost of relocating property stored in the warehouse, and instructing the jury that it could award those costs as an element of damage caused by the taking. The judgment of the trial court is therefore affirmed.

¶ 17 AFFIRMED.

HANSEN, P.J., and ADAMS, J., concur.

