GRAND RIVER DAM AUTHORITY
v. MARTIN.

No. 30534. Dec. 1, 1942.

Rehearing Denied May 25, 1943.

Application for Leave to File Second Petition for Rehearing Denied June 15, 1943.

*138 P. 2d 82.*

——

Edward P. Marshall and Q. B. Boydstun, both of Vinita, for plaintiff in error.

Richard Martin and Claude Garrett, both of Muskogee, for defendant in error.

HURST, J. This is a proceeding brought by Grand River Dam Authority to condemn an easement across a farm belonging to Martin. The Authority appeals from the judgment for Martin on the verdict.

In its petition the Authority asked for a perpetual easement 100 feet wide and 1,980 feet long across the 90-acre farm of Martin, "to erect, operate, and maintain a line or lines of poles, wires and fixtures for the transmission of electric energy." Among other incidental rights it sought to acquire was the right of ingress, the cutting down, removing or trimming of trees on the strip, and the right to set guy and brace poles and anchors, and to attach all necessary guy wires. The number and location of the poles, the number and height of the wires, the number of guy wires and guy brace poles, and the character or amount of fixtures to be placed on the land were not specified in the petition, nor were any rights specifically reserved to Martin in the strip. The right of way traversed the farm, 20 acres lying east of the right of way, and the remainder lying west of it. After the commissioners had made their award, the Authority paid the money into court, and at the time of the trial had constructed a power line on the right of way. The judgment of the trial court gave the Authority the rights asked for in its petition.

The Authority argues eight propositions in its brief. These may be grouped and reduced to three, (1) errors in the admission and rejection of evidence, (2) errors in giving and refusing instructions, and (3) that the verdict is contrary to the evidence and excessive.

1. a. It is contended that Martin should not have been permitted to show the amount of rents and income received from the farm for one particular year. After Martin had testified that his rents were from $7 to $10 per acre, he was permitted to testify that in one very dry year the land produced a good crop of corn. Counsel argue that such evidence is inadmissible, and does not tend to establish fair market value, citing City of Cushing v. Pote, 128 Okla. 303, 262 P. 1070, and Grand River Dam Authority v. Bomford, 188 Okla. 512, 111 P. 2d 182. In the case first cited, it was held that testimony as to crops produced was admissible to explain the market value testified to. In the Bomford Case it was held that it was not reversible error to refuse to admit evidence of rentals received under the circumstances there shown. It was not error to permit Martin to show the rentals received and crops produced as the basis for his estimate of market value. The fact that he was permitted to testify to the production for one year simply went to show its fertility under adverse conditions, which would have some bearing on its market value. There was no effort to confine the testimony to the crops raised during that particular year. We think this contention is without merit.

b. It is next contended that Martin should not have been permitted to prove the cost of fencing off the right of way from the rest of his farm. The court did not instruct the jury that it could take into consideration the cost of fencing in fixing the amount of recovery. Furthermore, one witness for the plaintiff fixed the amount of depreciation of value by reason of the taking at more than the amount of the verdict. Several witnesses for the defendant fixed the value of the land taken and the damage to the remainder at considerably more than the amount of the verdict. Assuming, without deciding, that the evidence complained of was not admissible,

we think its admission constituted harmless error.

c. It is argued that the trial court erroneously permitted a witness to testify that he knew of another power line breaking upon one occasion, and that the break caused certain damage. The line for which the right of way was sought to be condemned was to carry 110,000 volts of electricity, and the evidence was evidently offered for the purpose of showing that such lines are dangerous, and that the maintaining of such a line across the farm injuriously affected the market value thereof. The danger attending the presence of wires carrying high voltage is a matter of common knowledge. While the Authority cites a number of cases in support of its contention, this court, in Public Service Co. of Oklahoma v. Raburn, 162 Okla. 81, 19 P. 2d 167, and Oklahoma Gas & Electric Co. v. Kelly, 177 Okla. 206, 58 P. 2d 328, held that such evidence is competent as bearing on the depreciation in the market value of the property over which the easement is taken and the power line is constructed.

d. The Authority also argues that the trial court refused to permit it to show by its engineer that the construction of its line was safe and non-hazardous. But the offer of proof made by the Authority, and which was refused by the trial court, went to the possibility of more than one line being placed on the right of way rather than to the safety appliances used in case the wire broke. No specific question as to appliances for rendering the line harmless in case it broke was propounded to the witness. The error, if any, may not be reviewed here in the absence of a specific question and an offer of proof. Fife v. Adair, 173 Okla. 234, 47 P. 2d 145. The witness was permitted to testify as to precautions used to guard against damages due to lightning, and that the Authority was subject to the safety regulations of the Federal Power Commission and of the National Safety Code. He was not asked to state what safety devices these regulations required, nor were such regulations offered in evidence. We conclude that this contention is untenable.

e. The Authority also contends that the witnesses who testified to the value of the land taken and the damages to the remainder did not testify as to fair market value at the time of taking.

The record discloses that twelve witnesses testified for plaintiff as to the value of the land taken and damages to the remainder of the tract by reason of the taking. Four of them specifically testified to the fair market value. Six testified to value based on their knowledge of sales of similar lands in the general vicinity, and their testimony shows that when they testified to the "value" of the land, or what it "was worth," they were testifying to market value. Two stated their valuation was based upon the fertility and productivity of the farm, and that they were familiar with land values, though they did not know of any recent sales. The testimony of all these witnesses placed the value of the land at about the same figure, ranging from $100 to $150 per acre. It is evident that, while the words "fair market value" were not used in questioning some of them, they were testifying to what in their judgment was the fair market value. We do not believe the use of the terms "value" and "worth" to denote market value was misunderstood either by the witnesses or the jury.

For the Authority, seven witnesses testified that the fair market value of the land was from $50 to $65 per acre. The trial court instructed the jury that the damages were to be measured by the fair market value of the land, and upon request of the Authority they were permitted to view and inspect the premises. We are of the opinion that no prejudice resulted to the Authority because of the failure of counsel for Martin to use the. term "fair market value," after he had qualified the witnesses, in eliciting their testimony. Such failure, if error, was harmless.

f. It is also contended that the testimony of Martin's witnesses did not show

the fair market value as of the time of taking. When this was called to his attention Martin requested and was granted permission to reopen the case, and the witnesses testified that their testimony as to value and damages previously given would apply as of March 5, 1941, the date of the taking.

2. The Authority contends that the trial court erred in instructing the jury that the perpetual easement which it sought to condemn was a taking of the entire 100-foot strip, and that the jury should allow Martin the reasonable market value of the land embraced in the strip, plus the damages, if any, to the remainder of the farm by reason of such taking, and that the landowner could not recover any damages other than those awarded at the trial. The Authority requested instructions on the theory that its easement did not constitute an entire taking, and that the owner retained the right to use the strip subject to the superior right of the Authority to occupy so much of it as was necessary, and to go upon it at all times in the exercise of the rights acquired by virtue of the easement. The Authority argues that it is actually taking only the land upon which its poles, guy and brace poles, and guy wires are located, and that Martin is not denied the right to use and enjoy the remainder in any way consistent with its rights. It objected to evidence of the value of the land included in the strip for this reason, and offered evidence, which was excluded, to show that it permitted landowners across whose lands its line was built to exercise such rights as did not interfere with its use of the land under the easement.

We think the trial court's instructions were proper. As heretofore stated, the easement sought gave the Authority the right to occupy the entire strip. The denial of any use thereof by Martin was within the power of the Authority, and if he was excluded therefrom, he was without remedy therefor. The easement being perpetual, he was left with only the naked legal title, which is of no definite value to him unless and until the use of the strip for the purposes specified in the easement is abandoned. In such case it was not error to assess the damages as though the fee title to the strip was taken. Guthrie & W. Ry. Co. v. Faulkner, 12 Okla. 532, 73 P. 290; Caldwell Power Co. v. Russell, 188 N. C. 725, 125 S. E. 481; Shell Pipe Line Corp. v. Woolfolk, 331 Mo. 410, 53 S. W. 2d 917; 20 C. J. 725; 29 C. J. S. 987. In many cases the easement is limited to a specific number of poles or towers, specifies the number of wires and their distance from the ground, and reserves to the landowner his full rights to the remainder of the land embraced in the easement. Where the easement is so limited, the rule contended for by the Authority would probably apply. Such is the nature of the easement in most of the cases cited by counsel for the Authority. Such was the nature of easement considered in Durell v. Public Service Co. of Oklahoma, 174 Okla. 549, 51 P. 2d 517, as shown by the record in that case.

The measure of damages where there is or may be a total appropriation of the land covered by the easement is the fair market value of the land so appropriated, and the damages, if any, to the remainder of the land by reason of the appropriation. Oklahoma Gas & Electric Co. v. Kelly, above; Public Service Co. of Oklahoma v. Raburn, above; Incorporated Town of Sallisaw v. Priest, 61 Okla. 9, 159 P. 1093; Wichita Falls & N. W. R. Co. v. Munsell, 38 Okla. 253, 132 P. 906. The instructions in the instant case correctly stated the measure of damages.

The Authority argues that under State v. Adams, 187 Okla. 673, 105 P. 2d 416, instruction No. 6, which told the jury that the owner could not recover any damages for the taking other than those recovered in the instant case, was erroneous, as it permitted the jury to return a verdict for speculative damages. We do not agree. In the Adams Case we dealt with consequential damages occurring after the highway had been completed, and held that since such damage could not have been reasonably

anticipated, it was not covered by the consideration paid the owner for the right of way. In the instant case the only damages considered were those incident to the taking. In instruction No. 8 the jury was told that the damages could not be based on conjecture, speculation, or surmise, but must be reasonable and probable. By instruction No. 12 the jury was told that it could award only such damages as might be reasonably anticipated to result from the use of the land by the Authority on the basis that it would construct and operate its line in a skillful and proper manner.

We are committed to the rule that where the instructions as a whole correctly state the law applicable to the facts, the failure to include all the applicable law in a particular instruction is not error. City of Muskogee v. Magee, 177 Okla. 39, 57 P. 2d 252; Gulf, C. & S. F. Ry. v. Taylor, 37 Okla. 99, 130 P. 574. When so considered, the instructions are not subject to the criticism made.

3. The contention that the verdict is excessive is based principally on the fact that the jury allowed Martin compensation for the taking of the entire strip, which we have held him entitled to. The amount allowed was less than a number of the witnesses for Martin, and one witness for the Authority, testified had been sustained by reason of the taking. The verdict allowed Martin $400 for the 4½ acres of land embraced in the strip, and $250 for the damages to the remainder of the farm. The evidence tended to prove that the land taken was bottom land of exceptional fertility. We do not consider the award excessive.

Affirmed.

WELCH, C.J., and OSBORN, GIBSON, DAVISON, and ARNOLD, JJ., concur. CORN, V.C.J., and RILEY and BAYLESS, JJ., absent.