TULSA COUNTY DRAINAGE DIST. NO. 12 v. STROUD.

Rehearing Denied June 17, 1947.

No. 32500. May 6, 1947.

*181 P. 2d 1000.*

Conn Linn, of Tulsa, for plaintiff in error.

Kirk, Phipps, Campbell & Latting, of Tulsa, for defendant in error.

OSBORN, J. On March 4, 1944, plaintiff, Tulsa county drainage district No. 12, instituted a condemnation proceeding in the district court of Tulsa county seeking to condemn a right of way for a drainage ditch in the nature of a perpetual easement across the south 80 feet of a tract of land belonging to the defendant, Melton L. Stroud. Defendant, after commissioners had been appointed and made an award of $360, demanded a jury trial, which was duly had, and a verdict rendered for defendant for $2,500. The trial court approved the verdict and rendered judgment for defendant accordingly, and plaintiff appeals.

There is no dispute over the basic facts. Defendant was the owner of a tract of land fronting upon Highway No. 66 south of the city of Tulsa, said tract having a frontage upon the highway of some 280 feet and a depth of some 300 feet. An old drainage ditch extended through this tract separating the south 80 feet, the portion condemned, from the remainder. Defendant had purchased the entire tract as a site for a cottage camp or tourist camp, and on the northerly portion had constructed some 33 modern rental units. At the time the south 80 feet was condemned he had no improvements thereon, but testified that he had constructed a septic tank, conduits to carry away the surface water and other appurtenances necessary to the operation of a tourist camp upon the premises of sufficient size to take care of the demands of such units as might thereafter be placed upon the south 80 feet. He testified that some 14 additional units could be constructed upon the south 80 feet.

After the award had been made by the commissioners, plaintiff paid the money into court and took possession of the strip condemned and, at the time of

trial, had constructed its drainage ditch thereon.

Plaintiff's first contention is that the trial court erred in permitting the jury to consider evidence adduced by defendant showing the value of the entire tract at the time the strip was condemned by plaintiff and the reduction in such value due to the taking of the 80-foot strip.

Witnesses produced by defendant, who were experienced tourist camp operators, testified that the value of the entire tract, considering that the strip taken by plaintiff could be utilized by defendant to expand his tourist camp by the construction of additional units thereon, was some $95,000 or $96,000 and that after the taking the value of the remaining portion was $65,000. One witness produced by defendant testified that the value of the tract taken, regardless of any damage to the remainder of defendant's land, was approximately $1,500. Witnesses produced by plaintiff testified that the value of the land taken was from $400 to $600, and that the remainder of the tract suffered no damage by reason of the taking. The defendant testified that his tourist camp was a profitable enterprise; that the taking of the 80-foot strip deprived him of any land upon which he could expand his camp as he had originally planned, and that the operation of his camp with the additional units constructed on the 80-foot strip would have been much more profitable than it was at the time of the taking. Plaintiff says that the admission of this evidence was erroneous, and that the evidence should have been confined to the actual value of the land taken plus damages, if any, to the remainder not taken, and that evidence showing the expense of building and operating defendant's tourist camp, the extent and value of the business conducted, and the profits derived therefrom, was incompetent.

In City of Tulsa v. Creekmore, 167 Okla. 298, 29 P. 2d 101, we quoted with approval from Nichols on Eminent Domain (2d Ed.) vol. 1, § 219, as follows:

" 'In determining the market value of a piece of real estate for the purposes of a taking by eminent domain, it is not merely the value of the property for the use to which it has been applied by the owner that should be taken into consideration, but the possibility of its use for all purposes, present and prospective, for which it is adapted and to which it might in reason be applied, must be considered, and its value for the use to which men of prudence and wisdom and having adequate means would devote the property if owned by them must be taken as the ultimate test.' "

In Grand River Dam Authority v. Martin, 192 Okla. 614, 138 P. 2d 82, we held that evidence as to the crops produced from the land across which the easement was taken, and the amount of rents and income received from its use, was properly admitted in evidence by the trial court.

It is the general rule that where part only of a tract of land is condemned, the measure of damages is the difference between the fair market value of the whole property at the time of condemnation and the present market value of the property left. 10 R.C.L. p. 128, § 112; 18 Am. Jur. p. 905, § 265; 20 C. J. p. 730, § 189; 29 C.J.S. p. 976, § 139.

In Seaboard Air Line R. Co. v. United States, 261 U. S. 299, 67 L. Ed. 664, 43 S. Ct. 354, the Supreme Court said:

"The compensation to which the owner is entitled is the full and perfect equivalent of the property taken. Monongahela Nav. Co. v. United States, supra. It rests on equitable principles, and it means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken. 257 Fed. 397, 400."

While the evidence of the diminution in value of the entire tract due to the taking of a portion thereof necessarily comprehends the value of the tract taken and the damage to the remainder

because of such taking, thus embracing two elements of damage to the land owner, it is not essential that the two elements be separately considered, or that the verdict of the jury show the amount of each such element of damage. In the instant case the witnesses were not requested to separate the two elements, or to testify specifically as to the amount apportioned to the value of the land taken, and the amount apportioned as damages to the remainder because of the taking. If plaintiff desired to have these witnesses testify specifically as to the value of the land taken and to the decrease in value to the remainder occasioned by such taking, it could have required the witnesses to do so on cross-examination. This it did not do. The jury was permitted to inspect the property, so that they could consider the testimony given in the light of the condition of the property and its probable value for the purposes for which defendant purchased it and for which he intended to use it. Whether, as testified by the witnesses for plaintiff, the value of the land taken did not exceed $500 or $600 with no damage to the remainder by reason of the taking, or whether, as testified by the witnesses for the defendant, the value of the property was reduced from $95,000 to $65,000 by reason of the taking, was a matter for their determination. We conclude that the trial court did not err in admitting the evidence complained of, and that the verdict of the jury was not necessarily based upon speculative evidence.

Plaintiff also complains of the admission of evidence showing damage to defendant's remaining property caused by the construction and maintenance of plaintiff's ditch. But we have heretofore held that where the improvement was built and in operation at the time of trial, it was proper to permit the witnesses to testify as to facts then existing. State v. Winters, 195 Okla. 243, 156 P. 2d, 798; Incorporated Town of Sallisaw v. Priest, 61 Okla. 9, 159 P. 1093.

Plaintiff next contends that the trial court erred in giving instructions to the jury, and in refusing certain instructions requested by plaintiff. Plaintiff saved no exception to the instructions given and, therefore, error cannot be predicated thereon. State v. Oklahoma Railway Co., 153 Okla. 76, 4 P. 2d 1009.

The trial court properly refused the instructions requested by plaintiff, some of which were covered by the instructions given by the court, and the remainder of which are, in our judgment, incorrect. For example, in its requested instruction No. 7 plaintiff asked the court to instruct the jury that they were permitted to view the premises so that they could better weigh, consider and apply the testimony introduced at the trial, and further that if they found it impossible to harmonize the testimony of the witnesses and found from the evidence of their sense of view and from the testimony on the stand that any witnesses had willfully testified falsely, they had a right to disregard his testimony. The court refused this instruction but gave the customary instruction to the jury as to the credibility of witnesses. The instruction offered by plaintiff was properly rejected. By its instruction No. 8 plaintiff requested the court to instruct the jury that they could consider the evidence in the light of their view of the premises, but must not base their verdict in any degree upon their examination thereof, but must determine the facts of the case from the evidence alone. This was contrary to the rule announced in Blincoe v. Choctaw, O. & W. R. Co., 16 Okla. 286, 83 P. 903, in which the territorial court held that the jury could exercise its judgment based upon its inspection and observation of the premises, together with all the evidence introduced in the trial of the case. And this is the general rule. 20 C. J. 1013, § 406. The trial court did not err in refusing the instructions requested by plaintiff.

Considering the discrepancy, between the testimony of the witnesses for plaintiff and the witnesses for defendant, it

does not appear that the verdict of the jury was excessive. In City of Cushing v. Sarber, 92 Okla. 59, 217 P. 866, we held that a verdict of $2,000, in a case where the commissioners had fixed the value of the property taken at $775, was not so disproportionate as to be excessive or unfair. In the instant case it appears that the property had a peculiar value for the purposes for which defendant purchased it, and that the witnesses who testified for plaintiff did not take that factor into consideration in testifying as to the value of the property taken. Apparently the jury gave due consideration to that factor in arriving at their verdict.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, GIBSON, and ARNOLD, JJ., concur.