**OKLAHOMA TURNPIKE AUTHORITY**

v.

**STROUGH et al.**

**No. 35712.**

Supreme Court of Oklahoma.

Jan. 19, 1954.

Rehearing Denied Feb. 9, 1954.

Leon Shipp and C. E. Barnes, Oklahoma City, for plaintiff in error.

P. D. Erwin, Chandler, for defendants in error.

DAVISON, Justice.

This is a proceeding in condemnation under the power of eminent domain brought by Oklahoma Turnpike Authority, as plaintiff, against Alice B. Strough, now Prince, and her husband, Oscar Prince, and the unknown heirs, etc., as defendants. Additional parties defendant were added on motion. The parties will be referred to as they appeared in the trial court.

On May 21, 1951, the plaintiff filed its petition seeking the condemnation of a piece of land, 150 feet by 281.7 feet in size, located in the southwest corner of an 80 acre tract in Lincoln County, Oklahoma, owned by the defendants. Commissioners were appointed and assessed the amount of damages at $110. That report was vacated and other commissioners were appointed, who fixed the amount at $150. Upon demand of defendants, a jury trial was had, resulting in a verdict for defendants for $1650. Plaintiff has perfected this appeal from the judgment rendered upon the verdict, urging three propositions for reversal; namely, that the judgment is not supported by competent evidence; that the same is contrary to law; and that the amount of damages is excessive. We need consider only the second of these propositions.

The record discloses that defendants were the owners of slightly less than 100 acres of land one-fourth mile wide, north and south, and about five-eighths mile long, east and west. Crossing the southwest corner of the lands was a stream known as

Ranch Creek. It flowed from northwest to southeast. Almost parallel with said Creek, but several hundred feet south of it, was Dry Creek. These two streams flowed together at a point about a half mile south of the lands of defendants and at a point south of a turnpike which plaintiff proposed building. The road was to run in a general east-west direction slightly less than a half mile south of defendants' farm.

By using the one acre piece of land in the corner of the property where Ranch Creek crossed, plaintiff proposed to cut a new channel due south to Dry Creek and to barricade the old channel. The change would unite the two streams north of the proposed highway. In that manner, the two streams would be united before crossing the road, making it necessary to construct only one bridge instead of two. The value of the land to be appropriated was from $100 to $200. The major part of the amount found by the jury as damages was for estimated consequential damages. Here is the crux of the litigation.

It has become settled law in this jurisdiction that, under the provisions of Art. II, § 24, of the Oklahoma Constitution, a landowner is entitled to recover compensation for all land taken or damaged for public use whether the damages are direct or consequential. As to when his cause of action accrues for the recovery of consequential damages, depends entirely upon whether or not they are obvious or may be reasonably anticipated before they actually occur. In the case of City of Stillwater v. Robertson, 192 Okl. 395, 136 P.2d 923, one part of the rule was stated as follows:

"Where an injury is the natural and obvious result of the erection of a permanent improvement an action therefor accrues at the time the improvement is completed."

In the case of City of Altus v. Fletcher, 192 Okl. 20, 132 P.2d 942, 943, the other part of the rule was stated in the following words:

"When such improvement is permanent in its character and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened, and there can be as many successive recoveries as there are successive injuries."

Both of the above cited cases involved lands which were damaged by water as the result of the construction of dams. In the Stillwater case, the land lay within the boundaries of the proposed lake. In the Altus case, the land lay outside such boundaries but were damaged by subsequent floods. Thus the distinction between the two cases is apparent. When the proposed public use is for the making of a lake by the building of a dam, the meander line of its bank can be definitely determined by engineers simply by the measurement of elevation. The land within the bed of the proposed lake will obviously be taken. That land lying above the determined water level will not be taken or damaged except as the result of additional, and not necessarily obvious forces. In the Altus case, supra, those forces consisted of deposits of large amounts of silt in the lake bed followed by extremely hard rains.

Now, turning back to the record in the instant case, the testimony was to the effect that defendants' land was creek bottom land on which there were a large number of pecan trees; that much of it was flooded for short intervals by Ranch Creek when hard rains occurred; that if the flow of the flood waters was appreciably slowed down the probable result would be the deposit of large quantities of silt; that the probable result of such silt deposit would be the destruction of the pecan trees. The evidence was in sharp conflict on whether or not the proposed openings under the roadway were of sufficient size to carry off the flood waters after hard rains. On the part of plaintiff, engineers testified that they were; that the volume of water which might be expected to fall on the water shed was definite and that the proposed openings were of sufficient capacity. On behalf of defendants, other landowners and local residents testified as to their observations and opinions regarding possible flood waters and that the proposed open-

ings were insufficient. No actual damage to defendants' lands had occurred at the time the case was tried.

Thus the case before us differs from those cases involving the construction of lakes. It is more nearly analogous to the case of State v. Adams, 187 Okl. 673, 105 P.2d 416, 418, dealing with consequential damages resulting from water damage caused by the method of constructing a road. Therein, numerous previous decisions were reviewed and it was pointed out that:

"The anticipated damage where part of a tract is condemned must be such as is 'reasonably incident to the construction or operation of the work to be considered in awarding compensation, and if there is nothing in the matter of economy or safety which seems to require an extensive change in natural conditions, such as the diversion of a stream, damages for possible injury on that account will not be awarded.' 18 Am.Jur. 905; 10 R.C.L. 152. This general rule has been followed by this court. Oklahoma Gas & Electric Co. v. Miller Bros. 101 Ranch Trust, 1935, 173 Okl. 101, 46 P.2d 570; Sweeney v. Dierstein, 1935, 170 Okl. 566, 41 P.2d 673. See also Illinois Power and Light Corporation v. Peterson, 1926, 322 Ill. 342, 153 N.E. 577, 49 A.L.R. 692 and note VI; Lewis and Clark County v. Nett, 1928, 81 Mont. 261, 263 P. 418.

"The authorities cited by defendant do not, in our opinion, conflict with the general rule above announced. In fact, defendant relies on the rule stated in 20 C.J. 1068, to the effect that the owner must recover in one action 'all damages which have resulted, or are reasonably liable to result in the future, from a proper construction or operation of the improvement, and that no subsequent action will lie to recover for items which were or might have been considered in the original proceeding.'

"The injustice of a contrary rule is readily apparent. It would result, in many instances, in the condemnor being required to recompense the land-

owner for injuries he might never sustain, or in the landowner suffering injuries to his property without hope of redress, depending upon the views of the commissioners, or the jury on appeal, as to the probable nature and extent of damages remote and speculative, and incapable of ascertainment prior to the actual construction of the work. In the present case the land of plaintiffs had been adequately protected by the plan of construction of the old highway. They had no reason to expect a different result from the construction of the new. If, in a condemnation proceedings, an award for the value of twenty-five acres of their remaining land had been made, based on the remote possibility that the construction of the new road might damage plaintiffs' land to that extent, no court would have sustained such an award. * * *"

The Adams case was cited and approved in the more recent case of Andrews v. Proctor, 196 Okl. 272, 165 P.2d 610.

▉ With proper construction of the highway in the instant case, it was problematical that flood waters would be so slowed down as to cause silt deposit on defendants' lands. It was also problematical that, if silt was deposited, it would be in sufficient quantity to kill the pecan trees. Therefore, their loss was not a damage which defendants would obviously suffer from the construction of the new channel of Ranch Creek and the building of the turnpike. This conclusion does not mean that defendants cannot recover such damage, if, and when, it occurs. It simply means that the cause of action for such consequential damages does not accrue until the injury.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, ARNOLD, WILLIAMS, and BLACKBIRD, JJ., concur.

WELCH, J., concurs in result.

O'NEAL, J., dissents.