Don SMITH and Ora Mae Smith, husband and wife, Plaintiffs in Error,

v.

STATE of Oklahoma ex rel. DEPARTMENT OF HIGHWAYS of the State of Oklahoma, Defendant in Error.

No. 42192.

Court of Appeals of Oklahoma, Division No. 30.

Oct. 6, 1970.

Sandlin & Daugherty, by Hugh M. Sandlin, Holdenville, for plaintiffs in error.

John Paul Walters, Chief Counsel, by Thomas Keltner, Oklahoma City, Legal Division, Dept. of Highways, of Oklahoma, for defendant in error.

DOTY, Judge.

The parties to this appeal will be referred to herein as they appeared in the trial court.

Plaintiff, State of Oklahoma, ex rel. Department of Highways of the State of Oklahoma, brought this proceeding in condemnation of two certain strips of land owned by the defendants. After the report of a duly appointed commission, defendants demanded a trial by jury.

In constructing State Highway 99 running north out of Seminole, the State took 1.03 acres from the west side of one tract of defendants' land (referred to in the proceedings as Tract No. 1) containing approximately eight acres that had at some time in the past been platted as an addition to the city, but the plat had not been recorded and the streets and lots shown thereon had not been staked out. For the same purpose, the State took 1.27 acres from the west side of another tract of land owned by the defendants (referred to in the proceedings as Tract No. 2) containing approximately twelve acres, located approximately one mile north of Tract No. 1. Tract No. 2 had previously been an oil lease camp of the Carter Oil Company. It had eight houses on it, only two of which belonged to the defendants. A large septic tank that had been installed by Carter Oil Company served all of these houses.

The defendant Don Smith testified that the damage to the portion of Tract No. 2 that was not taken for the highway consisted of damage to the septic sewer system resulting from the cutting of a drain pipe between the septic tank and a creek, result-

ing in the waste running part of the way across the surface of the land to the creek, and requiring the construction of a whole new sewage disposal system.

A plumber testified for the defendants that the septic sewer system on Tract No. 2 was still being used but would eventually have to be replaced at an estimated cost of $9,750.00. On cross-examination, he stated that the pipe that had been cut did not carry raw sewage, but only run-off water from the septic tank, and that this water still ran to the same destination as before.

An engineer testified for the defendants that the sewer system on Tract No. 2 would have to be changed to meet State requirements, at a cost of approximately $9,700.00. On cross-examination, he stated that this sewer system was not properly located in the first place and would accommodate only a few more houses.

The testimony of four witnesses for the defendants as to the market value of the land taken from Tract No. 1 and damages to the remainder of that tract indicated total damages with respect to that tract in the amounts of $2,575.00, $9,000.00, $15,-000.00, and $17,060.00, respectively; and omitting the testimony of one witness (hereinafter discussed), the testimony of three witnesses for the plaintiff indicated total damages with respect to that tract in the amounts of $950.00, $1,030.00, and $1,-100.00, respectively.

The testimony of four witnesses for the plaintiff as to the market value of the land taken from Tract No. 2 and damages to the remainder of that tract indicated total damages with respect to that tract in the amounts of $625.00, $951.00, $635.00, and $1,925.00, respectively; and, omitting the testimony of the plumber and the engineer concerning the cost of replacement of the septic sewer system on the portion of Tract No. 2 remaining after the taking (hereinabove mentioned), the testimony of three witnesses for the defendants would indicate total damages with respect to that tract in the amount of $15,000.00, $15,000.-00, and $12,920.00 (plus damages resulting from disruption of the septic tank drain pipe), respectively.

Some of the witnesses were not asked about, and made no estimate of the amount of damages to the remainder of either tract, although all but the plumber and the engineer who testified for the defendants did estimate the market value of the portions actually taken from both tracts.

The jury returned a verdict for the defendants in the single amount of $1,100.50 with respect to Tract No. 1, and a separate verdict for the defendants in the single amount of $1,950.00 with respect to Tract No. 2, which, with respect to Tract No. 1 was fifty cents more than the estimate by one of the witnesses for the plaintiff (a professional real estate appraiser), and, with respect to Tract No. 2 was $25.00 more than the estimate by the same witness for the plaintiff. Judgment was rendered accordingly. The defendants' motion for a new trial was overruled. They appealed to the Supreme Court and present their arguments under four propositions:

1. Misconduct of witnesses in testifying that the project improved the property and had no value.

2. The error of the Court in permitting witnesses to testify who were not qualified to testify.

3. Prejudice of juror, John B. Roberts, who failed to disclose to us that he was a defendant in a case in which the counsel for plaintiffs were attorneys in and was pending at the time in the same court.

4. That the Court erred in instructing the jury in viewing the premises, particularly under the circumstances of the evidence at the time this case was closed.

■ The assignments of error will be answered as they appeared in the specifications set out by the defendants.

It is not clear what defendants meant in their statement of specification No. 1. They seem to be claiming, in part, that the witness testified the project had no value. The record does not reflect this.

The witness testified in response to a question as to the project increasing the value of the Tract No. 1, "It's worth more than twice as much."

Defendant's objection was sustained and the jury properly admonished not to consider this question and answer.

Defendant's motion for a new trial was denied.

In response to the next question as to how much the tract had been damaged, the witness answered;

"It hasn't damaged it, in my opinion, at all. It's increased its value."

Defendant's objection was sustained and the answer stricken as to the increase in value. The Court again admonished the jurors that their only consideration must be the value of the property at the time the State took it and so instructed the jury at the proper time.

■ Defendants claim that the jurors were prejudiced in spite of the court's extensive efforts to make the law clear to them that they were not to consider benefits. It is evident that the Court did not believe this to be true since neither a mistrial nor new trial was granted.

We have said many times that the trial court is in a position to observe the proceedings and the effects thereof under the conditions existing, which benefit this Court does not have, and that unless we find it clearly evident that the trial court has misjudged, we will not disturb his ruling.

■ Defendants claim the court erred in permitting witnesses to testify who were not qualified to testify. No objection was made as to the competency of any witness by defendants, nor was any motion to strike made at the close of any witness' testimony.

In Colorado Interstate Gas Co. v. Lorenz (1958), Okl., 330 P.2d 583, we held:

"This Court will not consider alleged errors of the trial court as to admission or rejection of testimony unless such alleged errors appear in the record of the case, and objections were made thereto in the trial court."

■ Defendants claim prejudice of juror John B. Roberts, who failed to disclose that he was a defendant in a case in which the counsel for defendants were attorneys, and that was pending at the time in the same court.

Mr. Sandlin's affidavit states that he was *one* of the attorneys for the plaintiffs in which the juror John B. Roberts was the only defendant. If Mr. Sandlin could not recognize John B. Roberts, the only defendant, we do not believe that, without some indication, and none appears in the record, that we could assume that Mr. Roberts knew Mr. Sandlin. Therefore we cannot ascribe any misconduct or failure to disclose information to the juror, nor can we ascribe any bias or prejudice to him.

In view of the fact that the verdict of the jury was unanimous we would not, therefore, be justified in setting it aside on account of an imagined possible bias of one juror.

■ Defendants claim that the court erred in not fully instructing the jury on viewing the premises, particularly under the circumstances of the evidence at the time the case was closed.

The instruction complained of is as follows:

"No. 6. You are instructed that you have been permitted to make a view and inspection of the property in question, and you have a right to exercise your own judgment, based upon your inspection and observation, together with all the evidence which has been permitted to go to you during the trial; and all this evidence and your observation is for the purpose of enabling you to form a correct judgment of the reasonable market value of the land taken and the damage, if any, to that remaining."

Defendant does not cite any case in which this instruction, or a similar one, has not been upheld, and we knew of none. This form has been used with little vari-

ance since the case of Blincoe v. Choctaw, O. & W. R. Co. (1905), 16 Okl. 286, 83 P. 903. See Tulsa County Drainage Dist. No. 12. v. Stroud (1947), 198 Okl. 688, 181 P. 2d 1000.

Affirmed.

LAVENDER, P. J., and HAMPTON, J., concur.