W.C. ROOT and Pauline
Root, Appellees,

v.

KAMO ELECTRIC COOPERATIVE,
INC., a corporation, Appellant.

Nos. 56995, 57071.

Supreme Court of Oklahoma.

Jan. 29, 1985.

Rehearing Denied May 29, 1985.

McMillan, Vassar & Kelly by Harry M. McMillan, Joe Sam Vassar and Albert C. Kelly, Bristow, for appellees.

Jack L. Rorschach, Vinita, for appellant.

LAVENDER, Justice:

Appellees, W.C. and Pauline Root, instituted the present action on October 5, 1979, by filing a petition alleging unauthorized entry onto appellees' land by agents, servants and employees of appellant KAMO Electric Cooperative. This petition alleged that one of appellant's survey stakes had destroyed a tractor tire of appellees' worth $661. Appellees also requested other actual and punitive damages, including the sum of $1,000 for the right of entry onto the land.

On October 29, 1979, appellant filed an answer and cross-petition. This answer alleged that the entry and survey made had been authorized by law and had been conducted pursuant to a temporary restraining order issued in a collateral suit and properly served on appellees.

Appellant's cross-petition alleged that it had the power as a rural electric coopera-tive, organized under the Rural Electric Cooperative Act, 18 O.S.1971, §§ 437 through 437.30, to acquire land by condemnation. Appellant sought to acquire a perpetual easement to establish and maintain a 161 KV electric transmission line across appellees' property. The easement would be one hundred feet in width and three thousand eight hundred feet long, encompassing approximately 8.8 acres of land. Appellant also sought the right to cross appellees' land to obtain access to this easement, as well as the right to cut back any trees which would endanger the transmission line.

Pursuant to appellant's cross-petition the trial court appointed three commissioners to assess the value of the easement to be condemned. The commissioners returned a report valuing the easement at $150,000. Appellant took exception to this report on the ground that one of the commissioners had a conflict of interest. Appellants' exceptions were sustained and a new set of commissioners were appointed.

The report of the second set of commissioners valued the easement across appellees' property at $12,560. This report was filed on January 16, 1980. On March 17, 1980, both appellant and appellees filed objections to the report and requested a jury trial.

Jury trial of this case commenced on May 4, 1981, and continued through May 7. At trial, evidence concerning appellant's alleged trespass and resulting damages was presented, as well as evidence concerning the proposed condemnation of the easement and its valuation.

The jury returned a verdict for appellees on May 7, 1981. The jury awarded $1,661 as damages from the trespass and valued the easement to be condemned at $80,000. Judgment was entered on this verdict.

On May 15, 1981, appellant filed a motion for new trial, alleging, among other points, error in submission of the trespass question to the jury and in the verdict on that question. In response to appellant's motion, appellees admitted that the evidence presented to the jury did not establish a

value of the right of entry for which the jury had returned an award of $1,000 in the trespass action. Additionally, appellees stated that the jury had awarded $9.58 in excess of the amount of actual damages proven to have resulted from the trespass. Appellees therefore tendered a remittitur in the sum of $1,009.58.

In hearing the motion for new trial on June 3, 1981, the trial court found that there was sufficient evidence of trespass, but that there was a lack of evidence as to damages as admitted by appellees. The trial court ordered a remittitur in the amount of $1,009.58. The balance of relief sought by appellant's motion for new trial was denied. Both appellant and appellees thereafter filed petitions in error in this Court challenging the trial court's rulings. Appellees subsequently dismissed their appeal.

Appellees then filed, in the trial court, a motion to determine and tax attorney fees, litigation costs and interest on the judgment. Appellant responded, asserting that appellees were not entitled to recover any of these elements in this action.

A hearing was held on this motion on June 17, 1981. After hearing evidence of the reasonableness of the requested attorney fees and litigation expenses in the form of expert witness fees, the trial court awarded interest, attorney fees and litigation expenses to appellees. Appellant in turn appealed from this ruling. Both of appellant's appeals have been consolidated for determination at this time.

## I.

Appellant's initial challenge to the judgment rendered pursuant to the jury verdict is presented on the grounds that certain of the instructions given to the jury by the trial court were erroneous and were properly objected to by appellant. In assessing this proposition we must be guided by the standard to be applied to a challenge to a jury verdict on the basis of improper instructions. As stated in the case of *Missouri-Kansas-Texas Railroad v. Harper:*[1]

> It is well settled in this jurisdiction that a judgment will not be disturbed because of allegedly erroneous instructions, unless it appears reasonably certain that the jury was misled thereby, resulting in prejudice to the complaining party. See *Commonwealth Life Insurance Co. v. Gay,* Okl., 365 P.2d 149. As said in that case (at pgs. 153 and 154):

> > "The salient test of reversible error in instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered, if the alleged errors had not occurred. *Missouri-Kansas-Texas Railroad Co. v. Jones,* Okl., 354 P.2d 415."

## A.

Appellant first asserts error in the trial court's review of the pleadings to the jury. In the course of this review the trial court stated that appellant's cross-petition for condemnation had stated that the easement was taken "for the construction, operation, maintenance and reconstruction of an electric power transmission line...." Appellant maintains that the word "reconstruction" had not been mentioned in the pleadings and that its inclusion in the court's review misled the jury into believing appellant had taken broader rights than those involved in the construction, operation and maintenance of an electric transmission easement for a single transmission facility consisting of several conductor wires. Upon review, we do not believe that the jury was misled by the court's statement.

In the case of *Gendron v. Central Maine Power Co.,*[2] the court faced the decisive issue of whether the power company's "proposed replacement or maintenance program [would] extend [the power company's] use beyond the rights acquired in the 1927 easement." The 1927 easement had been granted by deed which gave the power company the right to set and maintain a

---

**1.** 468 P.2d 1014, 1020 (Okla.1970).

**2.** 379 A.2d 1002 (Me.1977).

line of fourteen poles. The power company sought to replace all the poles as part of a long-term maintenance program. The grantor of the easement sought to enjoin this replacement. The Supreme Judicial Court of Maine stated:

"Whether the proposed maintenance program, with its new poles, is characterized as replacement, reconstruction or construction, rebuilding, or whatever, it all comes in the end to maintenance of the pole line at the same location, that is to say the maintenance of the original pole line."[3]

■ The word reconstruction simply means "to construct again."[4] It does not connote any additional construction. In observance of this fact, and the fact that the trial court admonished the jury that the summary of the pleadings did not constitute evidence in the case, we can find no prejudice to appellant, and no error by the trial court.

### B.

Appellant next argues that the trial court erred in giving three instructions, concerning the taking of the right of way, which used the terms "land taken" or "property taken." Appellant maintains that an easement is not land or property and that it was therefore error for the trial court to use these terms.

■ We first note that a judgment will not be disturbed on appeal for allegedly erroneous instructions where, viewed as a whole, the instructions fairly present the law applicable to the issues raised by the evidence and the pleadings.[5] Next, we note that Black's Law Dictionary[6] defines an easement both as a right of use over the property of another, and as an interest which one person has in the land of another. Both aspects of the definition are appli-

cable in the present case. Additionally, the instructions, taken as a whole, clearly indicate that the interest being taken by appellant was in the nature of an easement rather than a taking of the land in fee. We find no error in the giving of the three challenged instructions.

### C.

Appellant also argues, in its conclusion to its proposition of error challenging the trial court's instructions, that the jury was confused by an instruction[7] which stated that the jury could consider provisions of applicable laws in assessing the damages caused appellees by the taking of the right of way easement. The confusion, states appellant, arose from the trial court's final instruction,[8] which stated that the court had advised the jury of the law applicable.

■ Considered as a whole, the challenged instruction states that Oklahoma law proscribes certain activities within the immediate vicinity of a high voltage transmission line, and that the jury might consider the provisions of applicable Oklahoma laws in assessing damages from the taking. Construing this challenged instruction with the court's final instruction, it is clear that the only "applicable law" which the jury was to consider in assessing damages was that set forth regarding the proscribed activities in the area of the high voltage lines. Accordingly, the instructions given correctly represent the law applicable to the issues raised by the evidence and do not present grounds for disturbance of the judgment below.[9]

### II.

Appellant's second proposition of error challenges as improper the testimony of appellees' expert witnesses on factors used

---

**3.** Id. at 1005.

**4.** BLACK'S LAW DICTIONARY 1144 (5th ed. 1979).

**5.** *Kimery v. Public Service Co. of Oklahoma*, 622 P.2d 1066 (Okla.1980).

**6.** BLACK'S LAW DICTIONARY 457 (5th ed. 1979).

**7.** Instruction No. 13.

**8.** Instruction No. 16.

**9.** See *Kimery v. Public Service Co.*, supra, note 5.

in arriving at a valuation of the interest taken by appellant, and the closing statements of appellees' counsel on these factors at trial.

### A.

■ Appellant's first challenge under this general rubric is addressed to the testimony of one witness who testified that the general public's fear of overhead transmission lines was one of the factors he considered in reaching his valuation of the land. This challenge must be considered in light of appellees' overall position that the highest and best use of the property in question, which might properly form a basis for its valuation,[10] was to be broken up and sold as rural residential plots.

In the case of *Grand River Dam Authority v. Martin,*[11] this Court stated:

It is argued that the trial court erroneously permitted a witness to testify that he knew of another power line breaking upon one occasion, and that the break caused certain damage. The line for which the right of way was sought to be condemned was to carry 110,000 volts of electricity, and the evidence was evidently offered for the purpose of showing that such lines are dangerous, and that the maintaining of such a line across the farm injuriously affected the market value thereof. The danger attending the presence of wires carrying high voltage is a matter of common knowledge. While the Authority cites a number of cases in support of its contention, this Court, in Public Service Co. of Oklahoma v. Raburn, 162 Okl. 81, 19 P.2d 167, and Oklahoma Gas & Electric Company v. Kelly, 177 Okl. 206, 58 P.2d 328, held that such evidence is competent as bearing on the depreciation in the market value of the property over which the

easement is taken and the power line is constructed.[12]

Accordingly, we find no error in the admission of this expert witness' testimony, which took into account the depreciation in the value of the land near the transmission right of way occasioned by a perceptible fear on the part of the general public.

### B.

The next challenge presented by appellant again charges error as to the testimony allowed from this same expert witness on valuation. This expert's statements arguably reflect that his testimony was based in part on the consideration that all future damages had to be settled "here and now." Appellant argues that this witness had thus considered purely speculative damages in appraising the value of the land. Appellant states that this is contrary to this Court's statement in the syllabus in *Oklahoma Turnpike Authority v. Strough,*[13] in which we stated that "[i]n condemnation proceedings, only such damages will be awarded as may be reasonably anticipated to result from the use of the portion of the land taken for the purposes for which it was condemned."

■ The argument thus presented by appellant is well taken. However, by subsequent instruction[14] the court informed the jury that, in assessing a value of the easement, they were not to consider as an element of damage anything remote, imaginary, uncertain, speculative or sentimental, even though mentioned or testified to by the witnesses. In view of this subsequent instruction, and the return of an award by the jury well below the loss in value testified to by this witness, we do not perceive the admission of this testimony to have been reversible error.[15]

**10.** See *Oklahoma Turnpike Authority v. Martin,* 441 P.2d 449 (Okla.1968).

**11.** 192 Okla. 614, 138 P.2d 82, 84 (1942).

**12.** See also *Arkansas Louisiana Gas Co. v. Cable,* 585 P.2d 1113 (Okla.1978); *Oklahoma Gas & Electric Co. v. Kelly,* 177 Okla. 206, 58 P.2d 328 (1936).

**13.** 266 P.2d 623 (Okla.1954).

**14.** Instruction No. 15.

**15.** See *Chicago, R.I. & P. Ry. v. Taylor,* 173 Okla. 454, 49 P.2d 721 (1935).

## C.

The third argument presented by appellant, under this general challenge to the testimony admitted by the trial court, postulates error in that a second of appellees' expert witnesses on property valuation did not consider the before and after values of the improvements on the property in reaching his estimate of decrease in property values. In view of the fact that this witness also testified that the taking of the easement would have no effect on the values of the improvements, we consider this argument sophistic and of no merit.

## D.

In its conclusion of this proposition of error, appellant charges that prejudicial comments of witnesses and of appellees' counsel in closing argument merit the reversal of the present case. In assessing this challenge we find the following statement from the case of *Willis v. Fried,*[16] to be of guidance:

"Probability of change in the outcome of the lawsuit is the test of prejudice this court has long employed in alleged errors of practice and procedure." *Badgwell v. Lair,* 325 P.2d 968, 971 (Okl.1958). The crucial question of whether counsel's remarks resulted in actual prejudice lies within the discretion of the trial court and this Court will not reverse a judgment for that reason unless it clearly appears that the improper remarks influenced the verdict. *Smith v. Gizzi,* [564 P.2d 1009 (Okla.1977)] supra. In determining whether defense counsel's remarks had that effect we must look to the record and consider all pertinent facts and circumstances shown therein. *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 61 (Okl.1976).

The expert witnesses in the present case presented a wide range of valuations as to the loss of value to appellees' property from the taking of the easement by appellant. The experts of appellees testi-fied to a value diminishment averaging $136,450. Those of appellant set the loss of value at $7,700. The jury returned a verdict finding the loss to be $80,000. Considering the record, we find the jury's verdict reasonably supported by the evidence and do not feel that a contrary result would have been reached absent the challenged remarks.

In this regard, the following statement by this Court in the case of *City of McAlester v. Delciello,*[17] seems of particular relevance:

The amount of damages awarded defendants for condemnation of their property and the abutter's right to access to the land, was well within the permissible limits disclosed by the opinion testimony of witnesses whom the trial court found qualified to testify. The weight and credibility of the expert opinion testimony was for the jury to determine. In such cases the unvarying rule applied is that stated in syllabus 2 of *Oklahoma Turnpike Authority v. Daniel,* Okl., 398 P.2d 515:

"This court will not substitute its judgment for that of a jury in matters of damages to be awarded for the condemnation of property for a public use, nor will it disturb the verdict of a jury if supported by any competent evidence."

## III.

Appellant's third proposition of error, which was also raised in the context of the proposition discussing errors in instructions to the jury and reserved for discussion at this point, challenges the submission of the question of trespass to the jury. Under the instructions given to the jury[18] the appellant was to be found to have trespassed upon appellees' property, and to be liable for all resulting damages, if appellant's agents and servants had entered the property without appellees' permission or without authority. Under these instruc-

---

16. 629 P.2d 1255, 1257 (Okla.1981).

17. 412 P.2d 623, 627 (Okla.1966).

18. Instructions Nos. 5, 6 and 7.

tions the jury concluded that appellant had trespassed and that this trespass had resulted in damages to appellees.

■ The question presented here is whether appellant had the right, pursuant to its legislatively granted power of eminent domain, to enter onto appellees' property prior to filing of condemnation proceedings for the purpose of conducting a preliminary survey. If appellant possessed this power, it could not, as a matter of law, be a trespasser while conducting the survey, and the trial court's submission of this issue to the jury would be erroneous.[19] In this context, the question is one of first impression in this jurisdiction.

Appellees rely on the following language from the case of *Allen v. Transok Pipe Line Co.*,[20] to support their contention that the question of trespass was properly submitted to the jury:

> It reasonably follows that in the case at bar, a public utility invested by law with the power to exercise the right of eminent domain is not thereby clothed with an immunity not possessed by others who trespass upon the property or rights of private citizens, and must answer for its wrongs the same as any other trespasser.[21]

In *Allen*, the public utility had entered onto the property and laid the pipeline without ever initiating condemnation proceedings. Thus the acts amounting to the taking of the property had been accomplished without legal authority. Later cases from this Court [22] have clearly indicated that a trespass action would be available in such instance only in limited circumstances, i.e., where the entry was willful and wanton and without color of authority. None of the Oklahoma cases addressing this issue have dealt with an instance, such as we have here, where the trespass is claimed

for an entry made only for the purpose of a precondemnation survey.

Appellant is granted the power to have and exercise the right of eminent domain in the same manner and by the same proceedings as provided by law for railroad corporations.[23] Title 66 O.S.1971, § 51, provides the power to an authorized railroad corporation to enter upon any land for the purpose of examining and surveying its railroad. Section 53,[24] in setting forth the initial procedure to be followed where the landowner refuses to grant the desired right of way and the railroad seeks to condemn the interest, states that the commissioners appointed to assess the value of the interest shall file a report setting forth the quantities and boundaries of the interest. It is implied that the railroad's authorized survey would precede the initiation of the action so that the commissioners would know the extent, quantities and boundaries of the interest desired. In this instance the following statement from the Supreme Court of Missouri appears to be on point:

> Accordingly, pre-condemnation surveying is not only necessary to the exercise of the right of eminent domain, it is a part of eminent domain. The right of eminent domain is virtually useless to an entity without the right to survey, and that right must be available before the beginning of condemnation proceedings. As stated in *Thomas v. City of Horse Cave*, 249 Ky. 713, 61 S.W.2d 601, 604 (1933):
>
> > "[I]t is necessary that the exact location, amount, and description of the property sought to be condemned, be definitely ascertained, and in such circumstances, if these preliminary steps be denied, it would be at least difficult, if not impossible, to successfully carry out condemnation proceedings. We do

---

19. See *Zwink v. Burlington Northern, Inc.*, 13 Wash.App. 560, 536 P.2d 13 (1975); See also *Doctors Hospital of Mobile, Inc. v. Kirksey*, 290 Ala. 220, 275 So.2d 651 (1973).

20. 552 P.2d 375 (Okla.1976).

21. Id. at 381.

22. *Young v. Seaway Pipeline, Inc.*, 576 P.2d 1148 (Okla.1977); *Cox Enterprises, Ltd. v. Phillips Petroleum Co.*, 550 P.2d 1324 (Okla.1976).

23. 18 O.S.1971, § 437.2(*o*).

24. 66 O.S.1971, § 53.

not conceive that the Legislature intended to make a useless gesture by granting a privilege without any power, expressed or implied, to carry such privilege into effect and operation."[25]

In taking this position we adopt what appears to be the better reasoned view among those jurisdictions having considered the matter.[26]

Having decided that appellant had the right, as a matter of law, to conduct a proper precondemnation survey on appellees' property, it was error for the trial court to submit this question to the jury.[27] This is not to say that appellant would not be liable for any damages resulting from such an authorized entry,[28] however, the standard of assessing liability differs between injury flowing from the acts of a trespasser and one authorized by law to be on the property.[29]

While the error in rendering a judgment on the trespass theory below was cured to some degree by appellees' remittitur of the sum awarded as damages from the mere entry onto appellees' land,[30] the jury was still informed of the wrong standard to be applied as to appellant's liability for actual damages. As a result, the judgment rendered for appellees on the trespass theory awarding damages in the amount of $651.42 cannot be sustained.

However, in this case the amount of the award to appellees in excess of that justified by the law and evidence is readily ascertainable. In this instance appellees will be given the choice of filing a remittitur in the amount of $651.42 within ten days of the date of mandate of this opinion, in which case the judgment shall be vacated as to the award for damages from trespass and the judgment deemed affirmed as modified, or of having this cause remanded for new trial[31] on the issue of damages caused by appellant's precondemnation survey.[32]

## IV.

Appellant's final proposition of error challenges the trial court's award of attorney fees and litigation expenses under the provisions of 66 O.S.1981, § 55(D), which provides:

Where the party instituting a condemnation proceeding abandons such proceeding, or where the final judgment is that the real property cannot be acquired by condemnation or if the award of the jury exceeds the award of the court appointed commissioners by at least ten percent (10%), then the owner of any right, title or interest in the property involved may be paid such sum as in the opinion of the court will reimburse such owner for his reasonable attorney, appraisal, engineering, and expert witness fees actually incurred because of the condemnation proceeding. The sum awarded shall be paid by the party instituting the condemnation proceeding.

Appellant presents several arguments under this general proposition. These will be dealt with in order inverse to appellant's presentation.

## A.

■ Appellant argues that 66 O.S.1981 § 55(D), is violative of the due process and

25. *State ex rel. Rhodes v. Crouch,* 621 S.W.2d 47 (Mo.1981).

26. See Annot., 29 A.L.R.3d 1104 (1970).

27. Note 19, supra.

28. See *Birmingham-Trussville Iron Co. v. Allied Engineers, Inc.,* 225 Ala. 522, 144 So. 1 (1932).

29. Compare *Cooperative Refinery Association v. Young,* 393 P.2d 537 (Okla.1964) (trespasser liable for all damages occasioned by the trespass), with *Keel v. Titan Construction Corp.,* 639 P.2d 1228 (Okla.1981) (tortfeasor only liable for injury reasonably foreseeable from his acts).

30. See *Federal Surety Co. v. L.B. Adams Lumber Co.,* 170 Okla. 445, 40 P.2d 1057 (1935).

31. *National Farmers Union Property and Casualty Co. v. Watson,* 298 P.2d 762 (Okla.1956); see also *St. Louis-San Francisco Ry. v. Kilgore,* 366 P.2d 936 (Okla.1961).

32. See *Leach v. West,* 504 P.2d 1233 (Okla.1972); *Hartford Accident & Indemnity Co. v. Luper,* 421 P.2d 811 (Okla.1966).

equal protection provisions of both the Oklahoma and federal constitutions. This argument is presented on the grounds that the classification which allows an award for costs if the jury's verdict exceeds the commissioner's award by ten percent or more is arbitrary and capricious, and that the allowance of such an award takes appellant's property without due process of law.

We find the classification as to the qualification for the award to be reasonable. If a jury returns a verdict for ten percent more than the commissioners' award, it is apparent that the condemnee had a justifiable basis for requesting jury trial. By putting the costs of such an action upon the condemnee if the jury verdict does not exceed the commissioners' award by a substantial margin, the Legislature has attempted to discourage litigation when the initial award is substantially fair.

The substance of appellant's contentions has been considered by this Court and rejected in the case of *McAlester Urban Renewal Authority v. Cuzalina.*[33]

### B.

▮▮▮ This case was originally commenced by appellees' petition on October 5, 1979, and judgment rendered on the request for attorney fees and litigation costs on June 17, 1981. Title 66 O.S.1981, § 55(D), as amended by Oklahoma Session Laws 1980, Ch. 195, § 1, became effective on May 12, 1980. Appellant argues that the "retrospective" application of section 55(D) in this instance was improper. The question of award of attorney fees and costs is a question of procedure. It was not improper to allow the retrospective application of this statute affecting procedure.[34]

### C.

▮▮▮ Appellant also claims that section 55(D) is not applicable in this case because it provides that the party instituting the condemnation action shall pay the sum awarded as attorney fees and litigation expenses. Appellant argues that appellees instituted this action as a trespass action and thus, that section 55(D) does not apply. Appellant's argument is entirely specious. Though appellees instituted the action as one in trespass, appellant instituted the condemnation action by way of cross-petition.

### D.

Title 66 O.S.1981, § 55(D), as previously set out, provides that a condemnee may be paid such sums as *in the opinion of the court* will reimburse the condemnee for the reasonable attorney fees and litigation expenses *actually* incurred because of the condemnation proceeding. Appellant now alleges that the evidence before the trial court did not support the award of the litigation expenses.

▮▮▮ At the hearing on appellees' motion to tax attorney fees and litigation expenses, appellees presented the testimony of a local attorney who testified to the trial court as an expert on trial preparation for condemnation proceedings. This witness testified as to the reasonableness and necessity of the various charges submitted by appellees for reimbursement by the court. Appellant in turn presented its own witness to the contrary. The weight to be accorded to expert testimony is to be determined by the trier of fact,[35] in this case the trial court.

▮▮▮ Upon review of the testimony before the trial court it is apparent that the award of litigation expenses is supported by competent evidence and did not constitute an abuse of the court's discretion.

---

**33.** 520 P.2d 656 (Okla.1973).

**34.** See *Qualls v. Farmers Insurance Co., Inc.,* 629 P.2d 1258 (Okla.1981); see also *Nitchals v. Williams,* 225 Kan. 285, 590 P.2d 582 (1979); *Cutter*

*Flying Service Inc. v. Straughan Chevrolet, Inc.,* 80 N.M. 646, 459 P.2d 350 (1969).

**35.** *Orthopedic Clinic v. Hanson,* 415 P.2d 991, 995 (Okla.1966).

Accordingly, the award will not now be disturbed.[36]

### E.

■ The last of appellant's arguments to be considered is the assertion that the trial court erred in the entry of the award of attorney fees. Appellant bases this assertion on the fact that appellees' attorney did not submit detailed time records as appellant maintains were required by the cases of *Oliver's Sports Center, Inc. v. National Standard Insurance Co.,*[37] and *State ex rel. Burk v. City of Oklahoma City.*[38] This assertion is without merit.

In the *Oliver's Sports Center* case this Court stated, "The criteria for the awarding of a reasonable attorney's fee *in the absence of a contract* or a statute fixing the amount were clearly delineated in *State ex rel. Burk v. City of Oklahoma City,* 598 P.2d 659, 661 (Okl.1979)."[39] (Emphasis added). In the present case the amount of appellees' attorney fees had been set by contract. This contract was presented to the trial court at the hearing on costs and attorney fees. By its terms, appellees were to pay one third of the amount awarded by the jury in excess of the commissioners' award as attorney fees. The testimony of the expert witnesses of both appellant and appellees established that the terms of this contract were reasonable for this case.

Under the terms of 66 O.S.1981, § 55(D), as previously set out, the trial court was permitted to award such sums as would reimburse appellees for reasonable attorney fees actually incurred because of the condemnation proceedings. The evidence in the present case supports the conclusion of the trial court that the fees set by the contingent fee contract were both reasonable and actually incurred.[40] Accordingly, the award will not be disturbed.[41]

### V.

The judgment in the condemnation action based upon the jury's verdict is affirmed. The award of attorney fees and litigation costs by the trial court is affirmed. The judgment based on the jury's verdict in the trespass action is vacated on condition of remittitur by appellees within ten days of mandate of this opinion. If appellees choose not to remit the award of damages from the trespass the judgment in trespass shall be reversed and remanded for new trial.

AFFIRMED IN PART; AFFIRMED AS MODIFIED IN PART UPON CONDITION OF REMITTITUR.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, HARGRAVE, WILSON and KAUGER, JJ., concur.

BARNES, J., concurs in part, dissents in part; would grant a new trial.

OPALA, J., concurs in part, dissents in part.

---

**36.** See *Hester v. Hester,* 663 P.2d 727, 729 (Okla. 1983); *Hamilton v. Telex Corp.,* 625 P.2d 106, 110 (Okla.1981).

**37.** 615 P.2d 291 (Okla.1980).

**38.** 598 P.2d 659 (Okla.1979).

**39.** 615 P.2d at 294.

**40.** Appellant's argument that the various fees and costs were not actually incurred by appellees because they had not yet been paid or were, in fact, paid by appellees' attorneys is entirely spurious. *Webster's New Collegiate Dictionary* (1979), defines incur as "to become liable or subject to." The evidence in this case clearly indicates that appellees bore the ultimate liability for these debts, and thus had "actually incurred" the attorney fees and costs.

**41.** *Hamilton v. Telex Corp.,* supra, note 36.